**The STATE of Ohio**

v.

**KINCAID.**

2003-Ohio-4632.]

County Court of Morrow County, Ohio.

No. 02–TRD–13505.

Decided Aug. 5, 2003.

Jamie D. Campbell, Morrow County Assistant Prosecuting Attorney, for plaintiff.

Timothy J. Kincaid, pro se.

LEE W. McCLELLAND, Judge.

{¶ 1} This matter came before the court for bench trial on February 27, 2003. Present on behalf of the state was assistant prosecuting attorney, Jamie D. Campbell. The defendant, Timothy J. Kincaid, an attorney, was present but not otherwise represented by counsel.

{¶ 2} At approximately 7:48 p.m. on December 24, 2002, Trooper Thompson of the Ohio State Highway Patrol observed the defendant's vehicle southbound on I–71 in Morrow County, Ohio, and made a visual estimation that the defendant

was traveling in excess of the posted prima facie speed limit of 65 m.p.h. This initial estimate was then verified through the use of Trooper Thompson's Marksman 20/20 laser speed-measuring device. Trooper Thompson did four speed checks on defendant's vehicle with his Marksman 20/20 and recorded defendant's speed at 90 m.p.h., 86 m.p.h., 80 m.p.h., and 77 m.p.h. Trooper Thompson then stopped the defendant and issued a citation for speed in violation of R.C. 4511.21(D)(2).

{¶ 3} Trooper Thompson testified that he has eleven months of traffic enforcement experience and is trained and certified in the use of the Marksman 20/20 laser speed-measuring device and that his certificate was current on the date of defendant's citation. This training occurred in a one-week class at the Ohio State Highway Patrol Academy and three months' coach-pupil training. While at the academy, Trooper Thompson also received training on how to estimate visually a vehicle's speed.

{¶ 4} Trooper Thompson further testified that he performed four calibration checks both before and after defendant's arrest, at the beginning and the ending of his shift. These calibration checks included the "self test," "display test," "scope alignment test," and "calibrational tests." At no other time during his shift was the laser checked. During the calibration checks and at all times during his shift, Trooper Thompson found the laser device to be functioning properly. The Trooper further testified that when the laser measured the defendant's speed, there were no nearby sources of interference that could affect its readout. Trooper Thompson went on to testify that he has issued between 300 to 400 citations based on the use of a laser speed-measuring device.

{¶ 5} The court indicated on the record that expert testimony concerning the construction, accuracy, reliability, and method of operation of the LTI 20/20 laser speed-measuring device was received and approved in a prior case for the purpose of Evid.R. 201. While there was no testimony indicating whether the Marksman 20/20 device is the same as the LTI 20/20, there was some indication that the Marksman 20/20 is a newer model or updated version of the LTI 20/20.

{¶ 6} There are two issues raised by defendant's Crim.R. 29 motions to dismiss and two additional issues raised by the facts of this case: (1) Whether the use of a laser speed-measuring device is prohibited by R.C. 4511.091? (2) Whether expert testimony is necessary in each case involving a laser speed-measuring device where a different brand, model, or updated version of an existing brand or model is used to measure speed? (3) Whether the opinion of the court, accepting the expert's testimony concerning the construction, accuracy, reliability, and method of operation of the speed-measuring device, must be "reported" in order for that opinion to be "generally known within the territorial jurisdiction of the trial court" and thereafter be the subject of judicial notice within that jurisdic-

tion?   Evid. Rule 201(B)(1).   (4) Whether a trained and experienced officer's visual estimation of speed is sufficient to support a finding of guilty for a charge of speed in excess of the prima facie limit?

{¶ 7} The first issue before the court is whether a laser speed-measuring device is an "electrical or mechanical timing device [used] to determine the speed of the motor vehicle over a measured distance" as envisioned in R.C. 4511.091.

{¶ 8} Based upon the prior expert testimony received by this court on the accuracy and reliability of laser technology as a method of measuring speed, the court finds that measuring speed by use of a laser is based upon the principle that speed equals the distance traveled by a vehicle divided by the elapsed time. The laser device measures both distance and *time* and uses those findings to calculate speed.   Therefore, this court finds that the laser device is an "electrical timing device" that measures the speed of a vehicle over a measured distance.

{¶ 9} This court also finds that the purpose of R.C. 4511.091 is to bridge the gap created when the arresting officer does not personally view the commission of a misdemeanor speeding offense as required by R.C. 2935.03. Assuming, arguendo, that a laser speed-measuring device in not an "electrical timing device" as described in R.C. 4511.091, R.C. 2935.03 is not applicable to this case, because Trooper Thompson observed the commission of the offense and made a visual estimation of the defendant's speed.   Defendant's motion in this regard is denied.

{¶ 10} The next issue raised by defendant's motion is whether this court's judicial notice as to the construction, accuracy, reliability, and method of operation of one model of laser speed-measuring device may be extended to all types and models of laser speed-measuring devices and their upgrades.   To resolve this issue, the court must examine the elements of an expert's testimony that are necessary to determine the construction, accuracy, reliability, and method of operation of a laser speed-measuring device.

{¶ 11} First, the trial court must receive expert testimony that laser technology is generally accepted as a reliable and accurate way to measure speed and to confirm that the device in question is based on that technology.   Second, the expert must verify the construction, accuracy, reliability, and method of operation of the electronic speed-measuring device (radar or laser).   Once the expert's testimony is received and accepted on each branch, the court may then take judicial notice of these factors in all future cases involving such device pursuant to Ohio Evid.R. 201(B)(2) and (C):

"Expert scientific testimony is required * * * to establish that the detection device was designed to operate according to principles commonly accepted as reliable in the scientific community, and that it does operate according to those

principles, and produces a reliable result." *State v. Reck* (Dec. 21, 1994), 2d Dist. No. 1352 CA, 1994 WL 718230, at * 3.

■ {¶ 12} The expert's testimony must satisfy three foundational require-ments: (1) The person testifying must be qualified and accepted as an expert in the field of laser (or radar) technology. (2) That laser (or radar) technology, when used to measure speed, is based on principles commonly accepted as reliable in the scientific community. (3) That the particular device is constructed according to those scientific principles and produces an accurate and reliable result.

{¶ 13} Ohio Evid.R. 104(A) provides that "[p]reliminary questions concerning the qualification of a person to be a witness * * * shall be determined by the court." In making that determination, the trial court is guided by the three criteria of Evid.R. 702: (1) The expert must be prepared to testify to matters beyond the knowledge of lay persons; (2) The witness must be qualified to speak to matters by virtue of his specialized skill, education, training, or experience; and (3) Sound scientific, technical, or other specialized information must underlie the witness's testimony.

{¶ 14} In *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611, 687 N.E.2d 735, the Ohio Supreme Court followed *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, in establishing the criteria for the admissibility of expert scientific testimony. In *Daubert*, the court explained that the trial court's function is to act as a "gatekeeper" to ensure both the relevance and the reliability of expert testimony before it is admitted at trial. Id. at 593–594, 113 S.Ct. 2786, 125 L.Ed.2d 469. As the gatekeeper, the court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid" Id. at 592–593, 113 S.Ct. 2786, 125 L.Ed.2d 469. A list of factors was provided that a trial court may consider in determining whether expert testimony is relevant and reliable: (1) Whether the theory or technique has been tested; (2) Whether it has been subjected to peer review; (3) Whether there is a known or potential rate of error; and (4) Whether the methodology has gained general acceptance.

■ {¶ 15} The underlying principles of laser technology appear to be the same from one device to another. However, it appears from the Ohio cases that the expert testimony must be "device specific." *E. Cleveland v. Ferell* (1958), 168 Ohio St. 298, 7 O.O.2d 6, 154 N.E.2d 630 (stationary radar); *State v. Wilcox* (1974), 40 Ohio App.2d 380, 69 O.O.2d 333, 319 N.E.2d 615 (moving radar); *State v. Schroeder* (Sept. 8, 1995), 11th Dist. No. 95–G–1907, 1995 WL 787423 (LTI 20/20 laser); *State v. Kirkland* (Mar. 2, 1998), 3d Dist. No. 8–97–22, 1998 WL 126849 (K–55 radar—moving mode); *Moreland Hills v. Gazdak* (1988), 49 Ohio App.3d 22, 23, 550 N.E.2d 203 (Model S–80 moving radar); *State v. Saphire* (Dec.

8, 2002), 2d Dist. No. 2000 CA 39, 2000 WL 1803852 (Ultralite 20/20 Model 200 laser?); *State v. Colby* (1984), 14 Ohio App.3d 291, 291–292, 14 OBR 348, 470 N.E.2d 924 (K–55 radar); *State v. Freeman* (1985), 24 Ohio Misc.2d 7, 9–10, 24 OBR 131, 493 N.E.2d 571 (K–55 radar). Therefore, in addition to expert testimony about the underlying principles of laser technology, the expert must testify that the specific device is based upon these principles and when operated by properly qualified personnel according to operating instructions the device is an accurate speed-measuring device.

{¶ 16} The two leading cases involving the requisite expert testimony for speed-measuring devices are *East Cleveland v. Ferell,* supra (stationary radar), and *State v. Wilcox,* supra (moving radar). Both cite with approval Wigmore, The Science of Judicial Proof, at 450, holding that three criteria must be satisfied before a speed-detection device may be deemed reliable: "(1) The *type of apparatus* purporting to be constructed on scientific principles must be accepted as dependable for the proposed purpose by the profession concerned in that branch of science or its related art. This can be evidence by qualified expert testimony; or, if notorious, it will be judicially noticed by the judge without evidence. (2) The *particular apparatus* used by the witness must be one constructed according to an accepted type and must be in good condition for accurate work. This may be evidence by a qualified expert; and (3) The witness (i.e. the arresting officer) using the apparatus as the source of his testimony must be one qualified for its use by training and experience." (Emphasis added.)

{¶ 17} In *State v. Saphire* supra, 2000 WL 1803852, as in this case, there was confusion about the name of the laser device used by the officer. The Second District Court of Appeals stated, "Although the accurate name of the laser device used by [the arresting officer] is unclear, it appears that neither our court nor the Supreme Court has taken judicial notice of any laser device with one of the names listed *supra.* Further, there was no indication in the record or in the trial court's entry that it had previously heard expert testimony regarding *this particular laser device.*" (Emphasis added.) Id. at * 4.

{¶ 18} This court interprets these cases to require two inquiries of the qualified expert: First, is the underlying technology based upon scientific principles accepted as dependable for the proposed purpose? Second, was the particular device constructed using that technology and those scientific principles and was the device then tested by the expert and found to be dependable and accurate?

{¶ 19} This court has not received any expert testimony for a device called the Marksman 20/20, nor has this court received testimony that the LTI 20/20 is the same speed-measuring device as the Marksman 20/20. Research did not find a Fifth District case approving the Marksman 20/20 as an accepted speed-measuring device. This court therefore may not take judicial notice of the Marksman

20/20 laser speed-measuring device and Trooper Thompson's testimony regarding the laser readout is therefore inadmissible.

{¶ 20} This court therefore holds that expert testimony is necessary for each device, whether it be a new device or an upgrade of an existing device, before the court may take judicial notice of that particular device in future proceedings. Further, in those future proceedings, the state must demonstrate, with sufficient particularity, that the device at issue is the same device that was the subject of previous expert testimony. Defendant's second motion is therefore sustained.

{¶ 21} The first side issue raised by the facts of this case concerns the status of the expert's testimony in future cases. Once the proper expert testimony is received, how is it elevated to "generally known within the territorial jurisdiction of the trial court"? Evid.R. 201(B)(1).

{¶ 22} "In order for judicial notice to be taken, the fact must be one of common knowledge throughout the jurisdiction of the court." *State v. Doles* (1980), 70 Ohio App.2d 35, 24 O.O.3d 25, 433 N.E.2d 1290, paragraph one of syllabus. "In the absence of expert testimony in the present case, and in the absence of any expert testimony in a previous case before that court or a court of binding authority upon that court regarding the accuracy and dependability of the laser device, such fact is not of common knowledge within that jurisdiction and thus cannot be the subject of judicial notice." *State v. Saphire* (Dec. 8, 2000), 2d Dist. No. 2000 CA 39, 2000 WL 1803852, citing *Columbus v. Dawson* and *Doles,* supra.

{¶ 23} Some courts have construed Evid.R. 201(B) to mean that unless the decision is reported, either by the trial court or a court of higher authority in that jurisdiction, "the dependability of such device is not of common knowledge within [the] jurisdiction and cannot be the subject of judicial notice. *Doles,* supra, at 38 [24 O.O.3d 25], 433 N.E.2d 1290. Accord *State v. Farris* (Mar. 26, 1985), Franklin App. No. 83AP-1214, unreported [1985 WL 9921]. Cf. *State v. Ayesh* (1985), 24 Ohio App.3d 73, 74 [24 OBR 128], 493 N.E.2d 325 (the scientific reliability of K-55 radar has been authoritatively settled in the Twelfth Appellate District and is, therefore, a proper subject of judicial notice). Establishing for future cases the reliability of a particular laser device may be accomplished by means of a reported municipal court decision, as was done with radar in *Akron v. Gray* (1979), 60 Ohio Misc. 68 [14 O.O.3d 303, 397 N.E.2d 429], or by a reported or unreported case from this court, as was discussed in *Doles,* supra, at 38 [24 O.O.3d 25], 433 N.E.2d 1290, or by the Ohio Supreme Court, as was done in *City of East Cleveland." Columbus v. Dawson* (Mar. 14, 2000), 10th Dist. No. 99AP-589, 2000 WL 271766.

{¶ 24} It is the opinion of this court that requiring a "reported" case goes too far. Whether a case is reported is not always within the court's control. The court therefore holds that the filing of a journal entry setting forth the name of the specific device and covering each of the criteria set forth below satisfies the requirement that the "adjudicative facts" be "generally known within the territorial jurisdiction of the trial court" because they are generally known to the trier of fact in that court (1) that a qualified expert's testimony is received and accepted in open court, on the record and subject to cross-examination as to each speed-measuring device; (2) that the expert's testimony verifies that the underlying technology is based upon scientific principles accepted as dependable for the proposed purpose; (3) that the device itself is constructed based upon that technology and those principles; and (4) that the particular device was tested and is dependable and accurate.

{¶ 25} The fourth and final issue, after the exclusion of the laser readout, is whether there is sufficient remaining evidence to find the defendant guilty. The only remaining evidence is the officer's estimate of the defendant's speed. This testimony is based upon the officer's training and experience that may or may not qualify the officer as an expert on the visual estimation of speed.

{¶ 26} Ohio courts are split on whether a trained officer's estimation of speed, with nothing more (e.g., laser or radar), is sufficient to support a prima facie speeding conviction.

{¶ 27} In the Second, Third, and Eighth Districts, the opinion of the officer that the defendant was speeding, based upon a visual estimation, without more, is not sufficient to sustain the conviction by proof beyond a reasonable doubt: *State v. Meyers* (Dec. 9, 2000), 2d Dist. No. 2000 CA 49, 2000 WL 1879104, at * 2; *State v. Saphire,* supra, 2000 WL 1803852; *State v. Westerbeck* (June 19, 1987), 3d Dist. No. 17–86–18, 1987 WL 13063; *Broadview Hts. v. Abkemeier* (1992), 83 Ohio App.3d 633, 615 N.E.2d 656.

{¶ 28} The First, Fourth, Ninth, Tenth, and Eleventh Districts have held that an officer's estimation of speed is sufficient to sustain a speeding conviction in a prima facie case. *Cincinnati v. Dowling* (1987), 36 Ohio App.3d 198, 521 N.E.2d 1140; *State v. Harkins* (Aug. 5, 1987), 4th Dist. No. 431, 1987 WL 15492; *State v. Wilson* (Nov. 20, 1996), 9th Dist. No. 95CA006285, 1996 WL 668993; *Columbus v. Bravi* (Mar. 5, 1991), 10th Dist. No. 90AP–1135, 1991 WL 33095, at * 2; *Kirtland Hills v. Logan* (1984), 21 Ohio App.3d 67, 21 OBR 71, 486 N.E.2d 231; *State v. Jones* (Nov. 8, 1991), 11th Dist. No. 91–T–4508, 1991 WL 233644, at * 2.

{¶ 29} This court is of the opinion that the Second, Third, and Eighth Districts reached the correct result. This court therefore holds that the mere educated guess of the arresting officer as to the speed of a vehicle is insufficient

to overcome the presumption of innocence and the burden of proof of beyond a reasonable doubt for conviction. This result, however, should not be confused with the use of the officer's estimation of speed when the issue is tracking history or reasonable and articulable suspicion to stop.

{¶ 30} Based on the foregoing, the defendant is found not guilty, and the charge is dismissed. Costs to the state of Ohio.

Judgment for defendant.