OPINION
{¶ 1} Defendant-appellant, Gregory P. Gellenbeck, appeals pro se his conviction in the Washington Court House Municipal Court for speeding.
 {¶ 2} On July 6, 2008, appellant was traveling southbound on Interstate 71 in *Page 2 
the center lane; Trooper Mark Wells of the Ohio State Highway Patrol was traveling northbound on Interstate 71. Traffic was light and there were no other cars directly around appellant's vehicle. Trooper Wells visually observed appellant traveling over the posted 65 m.p.h. speed limit and estimated appellant was traveling at 80 m.p.h. Trooper Wells activated his Python radar, which was mounted in his patrol car, and clocked appellant traveling at 83 and 84 m.p.h. Trooper Wells initiated a traffic stop and cited appellant for speeding in violation of R.C. 4511.21(D).
 {¶ 3} On July 21, 2008, the day of his initial arraignment, appellant faxed a written request for a continuance of his arraignment. The arraignment was rescheduled for July 28, 2008. That day, appellant pled not guilty and asked that he be tried within the 30-day time limit under R.C. 2945.71. By entry filed August 4, 2008, the trial court scheduled appellant's bench trial for August 6, 2008. The trial court noted that the original 30-day time limit for trial ended on August 5, 2008; the grant of appellant's request for a continuance of his arraignment extended the speedy trial time limit by seven days; and Trooper Wells was unavailable from July 28, 2008 through August 5, 2008 as he was working a special detail. The trial court found that "the date set for trial is reasonable given the unavailability of the arresting officer and the one-week delay attributed to the defendant."
 {¶ 4} On August 6, 2008, following a bench trial during which appellant offered no evidence on his behalf, and based upon Trooper Wells' visual observation and the Python radar readings, the trial court found appellant guilty of speeding in violation of R.C. 4511.21(D). Appellant appeals, raising three assignments of error.
 {¶ 5} Assignment of Error No. 1: *Page 3 
 {¶ 6} "THE TRIAL COURT ERRED BY DENYING THE MOTION FOR DISMISSAL BY THE DEFENDANT-APPELLANT NOTING THAT HIS STATUTORY RIGHT TO A SPEEDY TRIAL HAD BEEN VIOLATED PER O.R.C. 2945.71(A)."
 {¶ 7} At the beginning of the bench trial, appellant orally moved to dismiss his speeding charge, alleging a violation of his speedy trial rights. Based on the reasons provided in its August 4, 2008 entry, the trial court denied appellant's motion. On appeal, appellant argues his statutory rights to a speedy trial were violated when he was not brought to trial within the 30-day time limit established in R.C. 2945.71(A), and thus, the trial court erred in denying his motion to dismiss. Appellant challenges the trial court's tolling of the speedy trial time limit based on his motion for a continuance and the trial court's sua sponte continuance because of the trooper's unavailability.
 {¶ 8} "The right to a speedy trial is guaranteed to all state criminal defendants by the Sixth and Fourteenth Amendments to the United States Constitution * * * and by Section 10, Article I of the Ohio Constitution." State v. Riley, 162 Ohio App.3d 730, 2005-Ohio-4337, ¶ 16. To preserve this right, the Ohio Legislature enacted Ohio's speedy trial statutes. See R.C. 2945.71 et seq. The speedy trial statutory provisions must be strictly enforced by the courts. Id., citingState v. Pachay (1980), 64 Ohio St.2d 218, syllabus. An appellate court's review of a speedy-trial issue involves a mixed question of law and fact: the appellate court defers to the trial court's findings of fact as long as the findings are supported by competent, credible evidence, but the appellate court independently reviews whether the trial court properly applied the law to those facts. Riley at ¶ 19.
 {¶ 9} Under R.C. 2945.71(A), a person against whom a charge of minor *Page 4 
misdemeanor is pending must be brought to trial within 30 days from the date of his arrest or the service of summons. If not brought to trial within the statutory time period, a defendant must be discharged. R.C. 2945.73(B). The time to bring a defendant to trial, however, may be extended for any of the reasons enumerated in R.C. 2945.72. Specifically, under R.C. 2945.72(H), the time within which a defendant must be brought to trial may be extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." The extensions of time under R.C. 2945.72 are to be strictly construed against the state. See State v. Singer (1977),50 Ohio St.2d 103.
 {¶ 10} Appellant was cited, but not arrested, on July 6, 2008 for speeding. As noted by the trial court, the original 30-day time limit for trial under R.C. 2945.71(A) was to end on August 5, 2008. On July 21, 2008, appellant filed a motion to continue his arraignment which the trial court granted. Because this continuance was granted upon appellant's motion, it was chargeable to appellant under R.C. 2945.72(H). This continuance tolled the speedy trial limit by seven days. Thus, the speedy trial time limit was extended from August 5, 2008 to August 12, 2008. See State v. Baker, Fayette App. No. CA2005-05-017,2006-Ohio-2516, ¶ 31; see, also, Dublin v. O'Brien, Franklin App. No. 07AP-695, 2008-Ohio-1105; and State v. Wynder, Ashtabula App. No. 2001-A-0063, 2003-Ohio-5978 (continuance of defendant's arraignment at his request extended the time for bringing defendant to trial). Appellant was tried on August 6, 2008.
 {¶ 11} It follows that appellant was brought to trial before the speedy-trial time limit had elapsed. As a result, we need not address appellant's challenge to the trial court's sua sponte continuance because of the trooper's unavailability. Appellant's *Page 5 
speedy trial rights were not violated and the trial court did not err by denying his motion to dismiss. Appellant's first assignment of error is overruled.
 {¶ 12} Assignment of Error No. 2:
 {¶ 13} "THE TRIAL COURT ERRED BY DENYING THE MOTIONS BY THE DEFENDANT-APPELLANT TO SUPPRESS THE TESTIMONY OF OFFICER WELLS REGARDING THE USE, READOUTS, FUNCTION AND ACCURACY OF THE PYTHON MOVING RADAR SYSTEM BEFORE LAYING THE FOUNDATION OF THE DEVICE'S RELIABILITY AND ACCURACY WITH EXPERT TESTIMONY FIRST."
 {¶ 14} Assignment of Error No. 3:
 {¶ 15} "THE RULING OF THE TRIAL COURT WAS NOT SUFFICIENT AND/OR AGAINST A MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN A CONVICTION."
 {¶ 16} Appellant challenges his speeding conviction on the grounds that the trial court improperly relied on Trooper Wells' visual estimation of appellant's speed and the readings of the Python radar.[1]
 {¶ 17} Appellant first asserts that Trooper Wells' testimony regarding his visual observation should have been stricken because the trooper's training and skills in visual observation relied entirely on the reliability and accuracy of a moving radar system.
 {¶ 18} The record shows that when Trooper Wells testified the very first time about his visual observation of appellant's speed, appellant's objection to the testimony was sustained. Thereafter, during the trooper's direct examination, appellant did not object to the trooper's testimony regarding his training in visual observation, but did *Page 6 
object to and moved to strike the testimony regarding his visual observation of appellant's speed. During direct examination, Trooper Wells briefly stated that he receives ongoing training and annual certification by the Ohio State Highway Patrol in visual speed observation.
 {¶ 19} When questioned on cross-examination by appellant, Trooper Wells testified that his training in visual observation and estimation is done as follows: the trooper sits in a patrol car which is either stationary or driven by the trooper; the instructor sits next to the trooper and asks the trooper to estimate the speed of an oncoming car; the trooper's visual estimation is then checked against the readings of a radar used by the instructor; the radar is a laser unit if the patrol car is stationary, or mounted in the car (such as the Python radar) if the patrol car is driven.
 {¶ 20} Appellant did not move to strike Trooper Wells' testimony after the state rested its case. Appellant does not cite, and we have not found any cases, supporting his assertion that an officer's visual observation of a driver's speed is inadmissible when a radar is used to train the officer in visual observation. In light of the line of appellate decisions, including from this court, that an officer's visual estimation of speed is sufficient to support a speeding conviction, seeState v. Kline, Warren App. No. CA2004-10-125, 2005-Ohio-4336, we find no error in the trial court's reliance on Trooper Wells' visual observation of appellant's speed.
 {¶ 21} Appellant also argues that the trial court erred in relying on the Python radar readings because there was no expert testimony as to the reliability and accuracy of the Python radar. The trial court did not take judicial notice of the reliability and accuracy of the Python radar. *Page 7 
 {¶ 22} The admissibility of readings from stationary radars was considered by the Ohio Supreme Court in East Cleveland v. Ferell (1958),168 Ohio St. 298. The Python radar is a radar mounted in a patrol car and is considered a moving radar.
 {¶ 23} There is a difference in the standard of proof required between a stationary radar and a radar mounted in a moving vehicle (moving radar). State v. Wilcox (1974), 40 Ohio App.2d 380. A person may not be convicted of speeding solely from a moving radar in the absence of (1) expert testimony with respect to the construction of the radar and its method of operation with respect to its ability to differentiate the speed of a vehicle approaching the moving patrol car from the opposite direction from the combined speed at which the two vehicles are moving toward each other; (2) evidence that the radar is in good condition for accurate work; and (3) evidence that the witness using the radar is one qualified for its use by training and experience. Id. at paragraph two of the syllabus.
 {¶ 24} Appellant argues on appeal that relying on the Python radar readings to convict him of speeding was improper because the state failed to establish the scientific reliability and accuracy of the Python radar. After reviewing the transcript of the bench trial, we find that appellant failed to specifically raise the issue of scientific reliability and accuracy of the Python radar. Rather, appellant generally objected to relying on readings from moving radars on the ground that no courts in Ohio had ever taken judicial notice of the scientific reliability and accuracy of moving radars.
 {¶ 25} At this juncture, we wish to point out that appellant is mistaken. It is well-established that the scientific reliability of the K-55 radar, a moving radar, has been authoritatively settled in the Twelfth Appellate District as well as in other appellate *Page 8 
districts, and is therefore a proper subject of judicial notice. See, e.g., In re Bolender (Dec. 28, 1998), Clermont App. No. CA97-11-104;State v. Bechtel (1985), 24 Ohio App.3d 72. Likewise, the scientific reliability and accuracy of another type of moving radar, the MR-7 radar, has also been settled in Ohio. See State v. Shelt (1976),46 Ohio App.2d 115.
 {¶ 26} With regard to the Python radar, although there are no cases from this jurisdiction that address or mention Python radars, three municipal courts from other jurisdictions have taken judicial notice of the scientific reliability and accuracy of Python radars. See UpperArlington v. Morse, 147 Ohio Misc.2d 118, 2008-Ohio-3886 (MPH Python II and III radars); State v. Carrington, 148 Ohio Misc.3d 3, 2008-Ohio-4878
(Python, Python II, and Python III radars); State v. Caldwell
(M.C. 2008), 2008-Ohio-7137 (K-55, Python, Python II, and Python III radars). See, also, State v. Yaun, Logan App. No. 8-07-22,2008-Ohio-1902 (upholding the municipal court's judicial notice of the construction and reliability of the Python II radar used in that case).
 {¶ 27} Because appellant failed to specifically raise the issue of scientific reliability and accuracy of the Python radar below, he has waived this issue on appeal. See State v. DeGrey, Warren App. No. CA2004-05-058, 2005-Ohio-5372. Nevertheless, errors otherwise waived may be considered by an appellate court under the doctrine of plain error if the error affects a substantial right. See Crim. R. 52(B). Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been different. State v.Palmer, Warren App. No. CA2005-08-097, 2006-Ohio-2712, ¶ 6. Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest *Page 9 
miscarriage of justice. Id.; State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 28} Trooper Wells testified that from his visual observation, appellant's car was traveling over the speed limit. In light of our prior decisions that an officer's visual estimation of speed is sufficient to support a speeding conviction, the outcome of the trial would not have clearly been different. See Kline, 2005-Ohio-4336, citingState v. Wilson (1995), 102 Ohio App.3d 1 (speeding conviction will not be reversed on sufficient grounds even if the radar reading was improperly admitted into evidence when the officer testified that, based upon his visual observation, the vehicle was speeding). We therefore find no plain error in the trial court's reliance on the Python radar readings.
 {¶ 29} We recognize that appellant was acting pro se in the proceedings below. However, the right of self-representation is not a license for failure to comply with the relevant rules of procedure and substantive laws. Palmer, 2006-Ohio-2712, ¶ 7. A criminal defendant appearing pro se is expected, as attorneys are, to abide by the rules of procedure, regardless of his familiarity with them. Id. Accordingly, a pro se defendant must accept the results of his own mistakes and errors. Id.
 {¶ 30} After reviewing the record, we find the trial court did not lose its way and create a manifest miscarriage of justice by believing the testimony of Trooper Wells. At trial, Trooper Wells testified in detail about the calibration of the Python radar before and after his shifts; how on July 6, 2008, he calibrated the Python radar three times, before and after his shift and after he pulled appellant over; and the fact that the Python radar was operating properly that day. Trooper Wells' testimony concerning his visual estimation of appellant's speed, his calibration of the Python radar, and the readings from the Python radar, coupled with his years of experience and ongoing training and *Page 10 
annual certification by the Ohio State Highway Patrol, constitutes some competent, credible evidence that appellant was traveling at least 80 miles per hour in a 65 mile per hour zone. State v. Eskridge (1988), 38 Ohio St.3d 56; State v. Combs (Dec. 29, 1989), Warren App. No. CA89-06-040. Thus, appellant's speeding conviction is not against the manifest weight of the evidence. Further, it is supported by sufficient evidence. State v. Wilkins, Clinton App. No. CA2007-03-007,2008-Ohio-2739, ¶ 22 (determination that a conviction is not against the manifest weight of the evidence is dispositive of the issue of sufficiency).[2]
 {¶ 31} Appellant's second and third assignments of error are overruled.
 {¶ 32} Judgment affirmed.
BRESSLER, P.J., and POWELL, J., concur.
[1] Notwithstanding appellant's assertion, appellant did not move to suppress Trooper Wells' testimony regarding the Python radar. Appellant, who was acting pro se below, did object several times to the trooper's testimony and orally moved to strike the testimony in its entirety at the end of the trooper's direct examination. The motion to strike was overruled.
[2] Appellant also challenged his speeding conviction on the grounds that (1) the state failed to prove that the speedometer of the patrol car was certified and working properly on the day of his citation, and (2) there was no significant evidence that Trooper Wells was qualified to operate the Python radar. We note that appellant failed to object to the trooper's alleged lack of qualification to operate the Python radar; we find no plain error. See Crim. R. 52(B). With regard to his first argument, appellant asserts that because of the lack of certification, Trooper Wells could not independently verify the speed of the patrol car. Trooper Wells testified that the radar tracks the speed of the patrol car which the trooper then checks against the patrol car speedometer; he constantly checks the patrol car speedometer against the radar, and both were working properly that day; speedometers of patrol cars are kept calibrated and are certified by Ford Motor Company; and he did not have a copy of the certification as he was not asked to bring one. Appellant has not cited, and we have not found, any cases regarding the certification of patrol car speedometer. Further, we do not rely on the speedometer of the patrol car to uphold appellant's speeding conviction. *Page 1