**The STATE of Ohio, Appellee,**

v.

**STARKS, Appellant.**

[Cite as *State v. Starks*, 196 Ohio App.3d 589, 2011-Ohio-2344.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2010–09–087.

Decided May 16, 2011.

Steven M. Runge, for appellee.

Thomas H. Starks, pro se.

PIPER, Judge.

{¶ 1} Defendant-appellant, Thomas H. Starks, appeals pro se his conviction in the Franklin Municipal Court for one count of speeding in violation of R.C.

4511.21(D)(1), a minor misdemeanor. For the reasons set forth below, we reverse the decision of the trial court and discharge Starks.

{¶ 2} On June 24, 2010, Trooper Eric Witmeyer of the Ohio State Highway Patrol was operating a stationary laser device at northbound traffic on Interstate 75 at mile post 40 in Franklin Township. This particular portion of the interstate was located in a construction zone, and the posted speed limit was 55 m.p.h. Witmeyer testified that he observed Starks's vehicle in the left-hand lane, passing other vehicles on the interstate. He further testified that in his estimation, Starks was "exceeding the posted 55 [m.p.h.] limit." Witmeyer activated his LTI ultra-light laser and received a reading that Starks's vehicle was traveling 70 m.p.h. Trooper Witmeyer initiated a traffic stop and issued Starks a citation for speeding in violation of R.C. 4511.21(D)(1).

{¶ 3} Starks entered a plea of not guilty, and a bench trial was held on July 23, 2010, during which Starks appeared pro se. The trial court took the matter under advisement, and in an entry dated July 27, 2010, found Starks guilty of speeding. Starks was fined $150 and ordered to pay court costs.

{¶ 4} Starks appeals the trial court's entry, raising five assignments of error for our review.[1] For ease of discussion and because Starks's third assignment of error is dispositive of this appeal, we will address the assignments out of order.

{¶ 5} Assignment of Error No. 3:

{¶ 6} "The trial judge erred when he allowed judicial notice."

{¶ 7} In his third assignment of error, Starks contends that the trial court erred in taking judicial notice of the scientific reliability of the LTI ultra-light laser.

{¶ 8} At trial, the state questioned Trooper Witmeyer regarding the steps he took to "assure that [his] laser speed detection device was in proper working order." Starks objected on the basis of judicial notice, stating "[t]here is no judicial notice in this jurisdiction about laser [sic]." Thereafter, the following exchange occurred:

{¶ 9} "The Court: Well, Mr. Starks, he hasn't asked you to take judicial notice, he's asked whether he had calibrated his laser so your objection is overruled.

{¶ 10} "Mr. Starks: Can, can I finish my (inaudible).

{¶ 11} "The Court: Sure, go ahead.

---

1. The record indicates that the state failed to file an appellate brief in this matter. As a result, this court may accept Starks's statement of the facts and issues as correct and reverse the judgment if his brief reasonably appears to sustain such an action. See App.R. 18(C).

{¶ 12} "Mr. Starks: There is, there's no documentation of a (inaudible) hearing in this jurisdiction that (inaudible) laser gun type device is accurate to a legal degree of certainty and admissible as scientific evidence to a speeding violation. Unless the prosecution intends to bring in expert testimony from a recognized expert[ ] in the field, I object to any testimony concerning reading from a laser speed laser device.

{¶ 13} "The Court: Have you identified which laser detection device it was yet, [prosecutor]?

{¶ 14} "[Prosecutor]: Not yet.

{¶ 15} "The Court: Can you ask him to identify which laser?

{¶ 16} "[Prosecutor]: Sure.

{¶ 17} "The Court: And I'll rule on that in a second.

{¶ 18} "[Prosecutor]: Sergeant Witmeyer, what's, what's the type of laser device you're using?

{¶ 19} "[Witness]: It was a laser LTI ultra-light.

{¶ 20} "The Court: Mr. Starks, the LTI ultra-light has been recognized as a scientifically accurate instrument by the [Twelfth] District Court of Appeals. This Court has the right to rely on their judicial notice and their findings that it is a scientifically accurate piece of equipment. For that reason I will overrule your objection."

{¶ 21} In order to be convicted of speeding based on laser-device evidence, there must be evidence introduced at trial that the device is scientifically reliable. *State v. Palmer*, Hamilton App. No. C–050750, 2006-Ohio-5456, 2006 WL 2987715, ¶ 10, citing *E. Cleveland v. Ferell* (1958), 168 Ohio St. 298, 301, 154 N.E.2d 630. It is well established that the scientific reliability of a laser device used to measure speed is a fact that is subject to judicial notice. *State v. Dawson* (Dec. 21, 1998), Madison App. No. CA98–04–021, 1998 WL 883802. Pursuant to Evid.R. 201(B), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

{¶ 22} The reliability of a particular speed-measuring device can be established through "(1) a reported municipal court decision, (2) a reported or unreported case from the appellate court, or (3) the previous consideration of expert testimony about a specific device where the trial court notes it on the record." *Cincinnati v. Levine*, 158 Ohio App.3d 657, 2004-Ohio-5992, 821 N.E.2d 613, ¶ 10.

{¶ 23} This court has previously recognized that a trial court may take judicial notice of the scientific reliability of the LTI 20–20 laser device. *Dawson* at 5; *State v. Bell* (Jan. 16, 1998), Madison App. No. CA96–07–027, 1998 WL 37486, 9. However, we have not recognized the reliability of the LTI ultra-light. In addition, our survey of the reported municipal court case law in this district has not revealed a decision that has considered the scientific reliability of this particular device.

{¶ 24} We are aware that other courts have concluded that expert testimony regarding the reliability of various models of laser and radar devices is irrelevant for purposes of judicial notice because "[i]t is the scientific principle underlying a device's reliability—and not the reliability of a specific model—that renders judicial notice proper." *State v. Wiest*, Hamilton App. No. C–070609, 2008-Ohio-1433, 2008 WL 821801, ¶ 12; *State v. Yaun*, Logan App. No. 8–07–22, 2008-Ohio-1902, 2008 WL 1789892, ¶ 18. In *Yaun*, the Third Appellate District determined that the trial court did not err in taking judicial notice of the Python II radar device when it had previously taken judicial notice of the K–55 device. Id. at ¶ 19. The police officer in *Yaun* testified that the Python II radar operated on the same principle as other radar devices and that it was "exactly the same radar as the K–55." Id. at ¶ 14. In this case, however, there was no testimony from Trooper Witmeyer that the LTI 20–20 and the LTI ultra-light operated under the same scientific principle such that they could be deemed different models of the same device. As a result, we conclude that the trial court erred in taking judicial notice of the LTI ultra-light laser absent expert testimony with regard to its reliability.

{¶ 25} Although the underlying principles of laser technology may be the same from one device to another, generally judicial notice as to the reliability of a speed-measuring device is device-specific. *State v. Kincaid*, 124 Ohio Misc.2d 92, 2003-Ohio-4632, 796 N.E.2d 89, ¶ 15. Therefore, expert testimony is necessary, "whether it be a new device or an upgrade of an existing device, before the court may take judicial notice of that particular device in future proceedings." Id. at ¶ 20.

{¶ 26} Notwithstanding the trial court's error, we note that Starks raises the issue of the reliability of this specific laser device for the first time on appeal. Our review of the record reveals that at trial, Starks objected generally to the admissibility of "laser-gun type device[s]." He did not object to the reliability of the LTI ultra-light following Trooper Witmeyer's testimony, nor did he move to strike this testimony. Pursuant to Evid.R. 103, Starks has therefore forfeited all but plain error on appeal. Crim.R. 52(B); *State v. Kline*, Warren App. No. CA2004–10–125, 2005-Ohio-4336, 2005 WL 2001509, ¶ 10; *State v. Gellenbeck*, Fayette App. No. CA2008–08–030, 2009-Ohio-1731, 2009 WL 975746, ¶ 24, ¶ 27.

{¶ 27} Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights or influenced the outcome of the proceedings. *State v. Blanda,* Butler App. No. CA2010–03–050, 2011-Ohio-411, 2011 WL 332725, ¶ 20, citing *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Appellate courts are admonished to notice plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes* at 27, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Accordingly, an appellate court will not reverse a trial court's decision on plain-error grounds unless the outcome of the trial would have been different absent the alleged error. *State v. Stout,* Warren App. No. CA2010–04–039, 2010-Ohio-4799, 2010 WL 3836158, ¶ 56.

{¶ 28} Although the trial court erred in taking judicial notice of the reliability of the ultra-light laser, we must also determine whether the court's error was outcome-determinative, thus rising to the level of plain error. Our inquiry turns to whether the result of Starks's trial would have been different absent the laser-device evidence. The Ohio Supreme Court has held that "[a] police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed if the officer is trained, is certified by the Ohio Peace Officer Training Academy or a similar organization that develops and implements training programs to meet the needs of law-enforcement professionals and the communities they serve, and is experienced in visually estimating vehicle speed." *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, syllabus.

{¶ 29} In *Barberton,* the Supreme Court concluded that a police officer's visual estimation of the defendant's speed was sufficient to support a conviction under R.C. 4511.21(D) because there was testimony offered at trial as to the officer's certification, training, and experience in visually estimating vehicle speeds. Id. at ¶ 22. Specifically, the officer testified that he was trained to visually estimate vehicle speed, was certified by a law-enforcement training organization in visual estimations, and had performed hundreds of visual speed estimations as a police officer. Id. at ¶ 21. The officer further testified that based on his training and experience, he had estimated that the defendant's vehicle was traveling 70 m.p.h. in a 60 m.p.h. zone at the time of the traffic stop. Id. at ¶ 21–22.

{¶ 30} In this case, the totality of Witmeyer's testimony was that Starks was "exceeding the posted 55 [m.p.h.] limit." Although he testified that he had been with the highway patrol for approximately 24 years, there was no testimony as to his training, certification, or experience in visually estimating vehicle speed. He also failed to offer testimony regarding his estimate of the speed at which he

believed Starks was traveling. As a result, we find Trooper Witmeyer's testimony as to his visual observation of Starks's speed insufficient under *Barberton.* See also *State v. Riddle*, Ottawa App. No. OT–10–040, 2011-Ohio-1547, 2011 WL 1204750, ¶ 21 (concluding that state trooper's testimony did not satisfy *Barberton* because there was no discussion as to his certification or experience in visual speed estimation, and he testified only that the defendant was "driving over the speed limit").

{¶ 31} Because we have ruled that the laser device's reading as to Starks's speed should not have been admitted, and because the record lacks any other evidence that Starks was speeding, his speeding conviction must be reversed based upon insufficient evidence.

{¶ 32} Based on the foregoing, Starks's third assignment of error is well taken and sustained.

{¶ 33} Assignment of Error No. 5:

{¶ 34} "The trial judge erred because there was insufficient evidence to convict Starks of violating 4511.2101."

{¶ 35} In his fifth assignment of error, Starks claims that there was insufficient evidence to convict him of violating "ordinance 4511.2101." Starks argues that the citation issued by Trooper Witmeyer indicates that he was charged with violating this ordinance and that because Starks could "find no evidence of ordinance 4511.2101," the prosecution failed to meet its burden of proof in this case. Contrary to Starks's argument, however, the record clearly indicates that he was charged and convicted of violating R.C. 4511.21(D)(1). His fifth assignment of error is accordingly overruled.

{¶ 36} Assignment of Error No. 1:

{¶ 37} "The trial judge erred because [the] laser gun was not properly tested."

{¶ 38} Assignment of Error No. 2:

{¶ 39} "The trial judge erred when he ignored that officer [Witmeyer]'s training had not been established."

{¶ 40} Assignment of Error No. 4:

{¶ 41} "The trial judge erred when he did not require [the] prosecution to produce [a] traffic engineering survey."

{¶ 42} In his remaining assignments of error, Starks challenges the sufficiency of Trooper Witmeyer's testimony with regard to the condition of the laser on the day of the traffic stop and whether he was qualified to administer the device. He also argues that the state was required to produce a traffic-engineering survey in order to convict him of the offense.

{¶ 43} In light of our determination in Starks's third assignment of error, we decline to address the remaining assignments and overrule them as moot.

{¶ 44} The judgment is reversed, and Starks is discharged.

Judgment accordingly.

HENDRICKSON, P.J., and RINGLAND, J., concur.