[Cite as *State v. Sweat*, 2016-Ohio-2680.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-10-184 |
| | : | O P I N I O N |
| - vs - | | 4/25/2016 |
| | : | |
| QUINTIN D. SWEAT, SR., | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. TRD 1502045


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Quintin D. Sweat, Sr., 6234 Crosscreek Court, Liberty Township, Ohio 45011, defendant-appellant, pro se


**PIPER, P.J.**

{¶ 1} Defendant-appellant, Quintin Sweat, appeals his conviction in the Butler County Area II Court for speeding.

{¶ 2} Two Ohio State Highway Patrol Troopers were stationed on the eastbound side of State Route 129 when they determined that a car was traveling 83 m.p.h. in a zone where the maximum speed limit was 65 m.p.h. The troopers performed a traffic stop, identified

Sweat as the driver, and issued a speeding citation.

{¶ 3} Sweat pled not guilty, and the matter proceeded to a bench trial at which Sweat represented himself. During the trial, the troopers testified that they utilized an UltraLyte LR LTI 20/20 to determine Sweat's speed at 83 m.p.h., and that in their visual estimation, Sweat had been traveling approximately 80-82 m.p.h. Sweat objected to the testimony, and argued that this district has not taken judicial notice that the UltraLyte LR LTI 20/20 is accurate to a legal degree of certainty and admissible as scientific evidence of a speeding violation. The trial court overruled Sweat's objection and found him guilty of the speeding violation. Sweat now appeals his conviction, raising the following assignment of error.

{¶ 4} THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING DEFENDANT-APPELLANT GUILTY OF SPEEDING BASED SOLELY ON AN OFFICER'S UNAIDED VISUAL ESTIMATION OF THE SPEED OF DEFENDANT-APPELLANT'S MOTOR VEHICLE.

{¶ 5} Sweat argues in his sole assignment of error that his conviction is not supported by sufficient evidence where the troopers' visual estimation of his speed was the only evidence of his speeding.

{¶ 6} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Crockett*, 12th Dist. Fayette No. CA2014-08-018, 2015-Ohio-1765, ¶ 18. The appropriate inquiry is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Steele*, 12th Dist. Preble No. CA2014-07-005, 2015-Ohio-1705, ¶ 13.

{¶ 7} Sweat was convicted of speeding in violation of R.C. 4511.21(D)(3), which prohibits traveling more than 65 m.p.h. on the freeway. According to R.C. 4511.091(C)(1),

- 2 -

"No person shall be arrested, charged, or convicted of a violation of any provision of divisions (B) to (O) of section 4511.21 * * * based on a peace officer's unaided visual estimation of the speed of a motor vehicle* * *."

{¶ 8} The state presented the testimony from the two state troopers who pulled Sweat over for speeding. In their visual estimation, Sweat was traveling between 80 and 82 m.p.h. The state also presented testimony to establish that the troopers made use of the Ultralyte laser to determine that Sweat's speed was 83 m.p.h. before he was stopped for speeding. However, and as raised by Sweat to the trial court, no court in this district has taken judicial notice that the particular laser used by the troopers is scientifically reliable.

{¶ 9} This court has previously recognized that the reliability of a speed-measuring device can be established in one of three ways: a reported municipal court decision from this district, a reported or unreported case from our appellate court, or the previous consideration of expert testimony by the trial court as noted on the record. *State v. Starks*, 196 Ohio App.3d 589, 2011-Ohio-2344 (12th Dist.). Within *Starks*, we noted that no such decision existed wherein any court in this district took judicial notice of the reliability of the UltraLyte and no court had considered expert testimony on the issue. The circumstances set forth in *Starks* have not changed, as the state has never offered expert testimony to establish the scientific reliability of the UltraLyte in our district.[1]

{¶ 10} Instead, the state essentially argues that despite the lack of judicial notice of the device's reliability, the device was only used to *aid* the visual estimation of Sweat's speed by the troopers, but was not the sole basis for the speeding conviction. We decline to

---

1. In *State v. Starks*, we noted the UltraLyte appears to be a newer model or version of the LTI 20/20, and that this court has previously taken judicial notice of the scientific reliability of the LTI 20/20. 196 Ohio App.3d 589, 2011-Ohio-2344 (12th Dist.). Therefore, the state would only need to offer expert testimony that the fundamental operation and operating principles are the same so that the two lasers could be "deemed different models of the same device." *Id.* at ¶ 24.

implement the state's reasoning because the statute's plain language states that no speeding conviction can result from an officer's unaided visual estimation of the speed.

{¶ 11} There was no testimony that the UltraLyte speed determination was an aid to the troopers' visual estimation of speed. The record, in context, reveals the radar speed determination and the troopers' visual estimation of speed were independent of one another. While the state suggests the two determinations "corroborate" one another, the statute does not require a visual estimation to be corroborated.[2] To accept the state's proposition would require we step beyond our judicial role in an effort to rewrite the statute using a strained interpretation. This invitation we must decline. *See DeRolph v. State*, 78 Ohio St.3d 193, 212 (1997).

{¶ 12} While the state suggests that the testimony regarding the speed readout from the UltraLyte shows that the troopers' visual estimation was aided because it was "corroborated," we find that the testimony regarding the UltraLyte speed determination should have been stricken by the trial court given the lack of supporting expert testimony to show that the laser is scientifically reliable. *See Beachwood v. Joyner*, 8th Dist. Cuyahoga No. 98089, 2012-Ohio-5884, ¶ 15 (reversing speeding conviction because "the trial court erred in admitting any testimony regarding [the laser] reading without the benefit of expert testimony"); and *State v. Palmer*, 1st Dist. Hamilton No. C-050750, 2006-Ohio-5456, ¶ 17 (reversing speeding conviction where "laser device's reading as to [appellant's] speed should not have been admitted" where no judicial notice had been taken of the device's reliability).

{¶ 13} We find the case at bar similar to *State v. McKay*, 1st Dist. Hamilton No. C-130657, 2014-Ohio-2027. Therein, the First District determined that the trial court erred by

---

2. It is counter-intuitive to determine testimony is not admissible because of a lack of established trustworthiness and reliability, yet determine such testimony would be admissible to corroborate, or give weight to, other testimony.

taking judicial notice of the reliability of the radar device absent expert testimony. The *McKay* court noted that evidence of the appellant's speed was inadmissible absent proper judicial notice of the device's reliability so that the only remaining evidence of speeding was the trooper's visual estimation. The *McKay* court concluded that because "the trooper's visual estimation of McKay's speed was insufficient evidence to demonstrate that McKay had been speeding, no rational trier of fact could have found that the state had proved each element of the offense beyond a reasonable doubt." *Id.* at ¶ 15.

{¶ 14} We also find the facts of the case sub judice similar to *State v. Helke*, 2d Dist. Montgomery No. 26672, 2015-Ohio-4402. In *Helke*, the Second District determined that the trial court erred by taking judicial notice of a speed-measuring device that had not been proven to be scientifically reliable. The court reasoned that the testimony regarding the speed determination was not admissible because of the lack of scientific reliability of the device, and the only remaining evidence of guilt was the officer's visual estimation of speed. The *Helke* court concluded, "since the laser device was not specifically identified, and its scientific reliability was not established by any permitted methods, the State failed to prove the essential elements of the crime beyond a reasonable doubt" because the visual estimation alone could not provide sufficient evidence to convict. *Id.* at ¶ 46.

{¶ 15} In the case sub judice, like *McKay* and *Helke*, once the UltraLyte speed determination was inadmissible, the state presented no evidence that the troopers' visual estimation of Sweat's speed was aided in any manner. As such, the state failed to present sufficient evidence of Sweat's guilt.

{¶ 16} Once more, we remind the state that this court cannot take judicial notice of the scientific reliability of the UltraLyte without first considering expert testimony on the issue. However, in the absence of such judicial notice, the trial court erred by not sustaining Sweat's objection to the troopers' testimony on the results of the laser determination, and their visual

estimation alone cannot support a conviction.  As such, Sweat's assignment of error is sustained, and his conviction for speeding is reversed.

{¶ 17} Judgment reversed, and Sweat is discharged.


S. POWELL and RINGLAND, JJ., concur.