[Cite as *State v. Wilson*, 2018-Ohio-702.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2017-08-125 |
| - vs - | : | O P I N I O N<br>2/26/2018 |
| | : | |
| THOMAS E. WILSON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM FRANKLIN MUNICIPAL COURT
Case No. 17-05-TRD-3414

Steven M. Runge, Franklin City Prosecutor, P.O. Box 292, Franklin, Ohio 45005, for plaintiff-appellee

Thomas E. Wilson, 1217 Brookside Drive, Beavercreek, Ohio 45434, defendant-appellant, pro se

**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Thomas E. Wilson, appeals from his conviction in the Franklin Municipal Court for one count of speeding in violation of R.C. 4511.21(D)(3), a minor misdemeanor.[1]  For the reasons set forth below, we affirm Wilson's conviction.

---

1. Pursuant to Loc.R. 6(A), we hereby sua sponte remove this case from the accelerated calendar for purposes of issuing this opinion.

**{¶ 2}** On May 13, 2017, Trooper Robert Todd Bailey of the Ohio State Highway Patrol was operating an UltraLyte LR B laser device while doing routine traffic enforcement on Interstate 75 in Franklin Township, Warren County, Ohio.[2] At approximately 12:39 p.m., Bailey observed a blue Chevrolet operated by Wilson traveling above the posted speed limit of 65 m.p.h. Bailey activated his UltraLyte LR B device and received a reading that Wilson's vehicle was traveling 82 m.p.h. Bailey initiated a traffic stop and issued Wilson a citation for speeding in violation of R.C. 4511.21(D)(3).

**{¶ 3}** At his June 2, 2017 arraignment, Wilson entered a not guilty plea to the charge and executed a written "Waiver of Time," indicating he needed additional time to prepare his defense. Wilson filed a request for discovery with the prosecutor, seeking information relating to the specific laser device used in issuing the speeding ticket and Trooper Bailey's certification and training on said device. Wilson's request for discovery was filed May 30, 2017.

**{¶ 4}** A bench trial was scheduled for June 30, 2017. At this time, Wilson appeared before the court and moved for dismissal of the charge on the basis that the speeding citation had not been signed. The court denied Wilson's request, finding that the citation was not required to be signed "because it came through electronically to the Court." Wilson also asked the court to dismiss the case because the prosecutor had not provided the requested discovery. The prosecutor opposed the motion, stating that he had been unable to provide the discovery because Trooper Bailey had been on vacation and had just recently returned. The prosecutor indicated the requested discovery would be provided to Wilson by the end of the following week. The court denied the motion to dismiss and rescheduled Wilson's bench

---

2. The laser device Trooper Bailey operated was also referred to as an "ultra light LT LTI 2020 LRB" at trial. The user's manual for the device Trooper Bailey operated before effectuating a traffic stop on Wilson referred to the device as an "UltraLyte LR B." *See LTI's UltraLyte LR B User's Manual* (2d Ed.2002). Therefore, for consistency, we will refer to the device as an "UltraLyte LR B."

trial for July 11, 2017.

{¶ 5} Prior to the trial commencing on July 11, 2017, Wilson moved for a dismissal on the basis that his statutory speedy trial rights had been violated as he had not been brought to trial within 30 days. The court denied the motion, finding that the speedy-trial time period had been tolled and the time extended by Wilson's request for discovery. Thereafter, the trial commenced and the state called Trooper Bailey as its only witness.

{¶ 6} Bailey testified he has been a trooper with the Ohio State Highway Patrol for 24 years and has received training in speed enforcement through the police academy and postgraduate training courses. Annually he undergoes a written and visual estimation training course, and he has been certified in the use of the following speed detection instruments: "laser, radar, ultralight laser, ultralight laser LTI 2020, * * * laser LTI 2020, K Band, [and] X Band radar."

{¶ 7} Prior to using the UltraLyte LR B laser on May 13, 2017, Bailey stated he made sure the device was in proper working order. At approximately 12:39 p.m., he observed the Chevrolet operated by Wilson traveling above the posted speed limit of 65 m.p.h. and activated his UltraLyte LR B device. Using the device in accordance with his training, he recorded Wilson traveling 82 m.p.h.

{¶ 8} Wilson objected to the "introduction of evidence or testimony based on the use of a[n] electronic measuring device, specifically the ultra light * * * [as it] has not been established as scientifically reliable or accurate in measuring the vehicle speed." The trial court overruled the objection after the following discussion was held:

> THE COURT: To the best of my recollection it's been accepted by the Twelfth District Court of Appeals as scientifically accurate. The motion's been overruled.
>
> [PROSECUTOR]: Your Honor, this Court has also taken judicial notice of it.
>
> THE COURT: Taken judicial notice of it.

[PROSECUTOR]: Those instruments being scientifically accurate.

THE COURT: Correct. Overruled.

WILSON: Your Honor, I have two case studies I have two over [sic] appeals in the Twelfth Appellate Court that were overruled on the basis of the ultra light.

[PROSECUTOR]: And both of those cases proceeded [sic] this Court's determination that the ultra light is scientifically reliable.

THE COURT: It was a finding. We had an expert witness come down from Columbus. I did find that it was scientifically reliable and accurate. Overruled.

{¶ 9} On cross-examination, Wilson introduced the user's manual for the UltraLyte LR B into evidence and questioned Bailey about the maintenance of the device and whether the device had displayed any error codes or malfunctioned on the day his citation was given. Bailey did not recall receiving an error code on May 13, 2017, and explained that if the device malfunctioned and displayed an error code when it was in use, he would not have been able to measure Wilson's speed as the error code would have "blocked" the speed to prevent an erroneous reading. Bailey also testified that on the day the citation was issued, he performed a display integrity test, scope alignment test, reference frequency test, fixed distance test, and Delta distance test using the UltraLyte LR B before using the device to issue citations. Bailey explained that doing these tests is "routine" for law enforcement and that if, in doing the tests, "it doesn't match up, [he] would turn the machine in, * * * write it up [to] * * * say what it didn't do correctly and [he would] go get another [device] and check it and use it * * * [while] the other one [is] in for repair."

{¶ 10} Wilson also cross-examined Bailey about his training and certification to use the UltraLyte LR B and introduced Bailey's certification logs into evidence. The logs provided that Bailey was most recently certified on "Radar/Laser" by Sergeant R.L. Burd on June 28, 2016, and again on June 2, 2017 by Sergeant Crisafi. The logs further provided certifications

by the sergeants that Bailey "has demonstrated a satisfactory level of proficiency in the operation of the Ohio State Highway Patrol's Electronic Speed Measuring Devices" and "has a knowledge and understands the policies and procedures set forth to govern the operation of the devices." When questioned about whether he was certified specifically on the UltraLyte LR B model that he used in issuing Wilson's speeding citation, Bailey testified as follows:

> BAILEY: I have to be re-certified on theory. Okay. So whether I use a LTI 2020 and a LL, a UL LTI 2020 or LR B an ultra light laser, whatever one, it's still on the theory. It's still on the same principle. It doesn't change the theory here; the principle doesn't differ due to the model of the laser they give me. * * * As far as the laser itself, I was certified, I was re-certified by Sergeant Crisafi who went out with me as I spoke before, made me give him a visual estimation of vehicles before he (A) activated the radar or (B) I was able to pull the trigger on the laser gun and I had to be within the tolerance that he was askin[g] for or else I would have failed and [h]e wouldn't have signed off on my training.

{¶ 11} Following Bailey's testimony, the state rested and Wilson moved for acquittal pursuant to Crim.R. 29(A). His motion was overruled. Wilson then rested his defense after the trial court accepted the UltraLyte LR B's user manual into evidence, along with Bailey's certification logs, and emails exchanged by Wilson and the prosecutor. Prior to the court rendering judgment, Wilson and the trial court engaged in the following discussion:

> WILSON: The only question I have was uh, when expert testimony was provided with respect to this specific unit because I had two cases in the Twelfth Appellate Court that reversed a conviction based on the ultra light and one of them was as recent as last April, 2016.
>
> THE COURT: We took judicial notice of it about two or three years ago.
>
> [PROSECUTOR]: I got a copy of that case (inaudible).

Thereafter, the court rendered its verdict, finding Wilson guilty of the speeding violation. Wilson was ordered to pay a $100 fine and $102 in court costs.

**{¶ 12}** Subsequent to the court rendering its verdict, Wilson filed a written motion for acquittal pursuant to Crim.R. 29(C). Wilson argued the state failed to present expert testimony concerning the "suitability of the specific laser device as a speed measurement device" and failed to demonstrate Bailey had an "intent to sign" the electronic citation when it was issued. The state opposed the motion on the basis that Crim.R. 29(C) only applies to cases where there has been a jury trial. Alternatively, the state opposed the motion as judicial notice of the scientific reliability of the UltraLyte laser had been taken, as established in *Franklin v. Brown*, Franklin M.C. No. 14-01-TRD-0267 (Sept. 16, 2014), and the local rules of court authorized the filing of electronically produced tickets without a signature.

**{¶ 13}** The trial court denied Wilson's motion for acquittal, stating that Crim.R. 29(C) did not apply and Wilson's request was nothing more than a motion seeking reconsideration of the court's previous guilt determination. In denying Wilson's motion, the court noted it had addressed the issue of the scientific reliability of the UltraLyte device at trial. The court stated:

> The argument [made at trial] was that the State failed to produce any expert witness to testify to the scientific reliability and accuracy of the Lidar devices and in particular the Lidar 20/20 Ultralight. At that time, the Court informed Mr. Wilson that the court had taken judicial notice of the scientific accuracy and reliability of all Lidar units in a decision tilted *City of Franklin vs. Douglas Brown*. Said decision was decided on September 16, 2014 and filed for record.

The court attached a copy of the *Brown* decision to its denial of Wilson's Crim.R. 29(C) motion for acquittal.[3]

---

3. We agree with the trial court's determination that Wilson's motion for acquittal pursuant to Crim.R. 29(C) was, in essence, a request for the trial court to reconsider its previous denial of his motion for acquittal and its judgment of conviction. The trial court's judgment of conviction, filed July 11, 2017, was a final appealable order and the trial court did not have jurisdiction to reconsider its determination. *See State v. Boles*, 12th Dist. Brown No. CA2016-07-014, 2017-Ohio-786, ¶ 17 (noting that a motion for reconsideration of a final judgment is a nullity). As a judgment entered on a motion for reconsideration is also a nullity that a party cannot appeal from, our review of Wilson's arguments is limited to his appeal of the trial court's July 11, 2017 "Entry of Conviction After Trial to Court."

{¶ 14} Wilson timely appealed from his conviction, raising four assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED BY TAKING JUDICIAL NOTICE OF A SPECIFIC SPEED MEASUREMENT DEVICE BASED ON PREVIOUS EXPERT TESTIMONY WHERE NO PREVIOUS CASE WAS IDENTIFIED AT TRIAL AND THE PREVIOUS DEVICE WAS NOT IDENTIFIED AS THE SAME DEVICE USED IN THE CURRENT CASE.

{¶ 17} In his first assignment of error, Wilson argues the trial court erred by taking judicial notice of a speed-measuring device "based on expert testimony in a previous case [without] identify[ing] the case and the previous device so noticed." He further contends that the trial court erred in taking judicial notice as "expert testimony on a laser speed measuring device previously heard in the [t]rial [c]ourt is only applicable to the same device."

{¶ 18} "In order to be convicted of speeding based on laser-device evidence, there must be evidence introduced at trial that the device is scientifically reliable." *State v. Starks*, 196 Ohio App.3d 589, 2011-Ohio-2344, ¶ 21 (12th Dist.), citing *State v. Palmer*, 1st Dist. Hamilton No. C-050750, 2006-Ohio-5456, ¶ 10. "[T]he scientific reliability of a laser device used to measure speed is a fact that is subject to judicial notice." *Id.*, citing *State v. Dawson*, 12th Dist. Madison No. CA98-04-021, 1998 Ohio App. LEXIS 6141 (Dec. 21, 1998). Evid.R. 201(B) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

{¶ 19} As this court has previously recognized, the reliability of a particular speed-measuring device can be established through judicial notice in one of three ways: "(1) a reported municipal court decision, (2) a reported or unreported case from the appellate court; or (3) the previous consideration of expert testimony about a specific device where the trial

- 7 -

court notes it on the record." *Starks* at ¶ 22; s*ee also State v. Sweat*, 12th Dist. Butler No. CA2015-10-184, 2016-Ohio-2680, ¶ 9.

{¶ 20} This court has previously noted that a trial court may take judicial notice of the scientific reliability of the LTI 20-20 laser device. *Dawson*, 1998 Ohio App. LEXIS 6141 at *5-7. However, we have not recognized the reliability of the UltraLyte LR B laser-device. In addition, our survey of the reported municipal court case law in this district has not revealed a decision that considered the scientific reliability of this particular device. Therefore, the only way for the reliability of the UltraLyte LR B device to be established by judicial notice is through the trial court's previous consideration of expert testimony, which the trial court must mention on the record.

{¶ 21} When Wilson objected to Trooper Bailey's testimony about the UltraLyte LR B on the basis that it had not been established as scientifically reliable or accurate in measuring vehicle speed, the trial court erroneously stated that this appellate court had accepted it as scientifically reliable. However, the court then also took judicial notice that it had found the device scientifically reliable in a prior case it heard, stating, "We had an expert witness come down from Columbus. I did find that it was scientifically reliable and accurate." When denying Wilson's motion for acquittal, the court again referenced its prior case, noting that it took judicial notice of the scientific reliability of the device "about two or three years ago." The court did not, however, mention the prior case by name at trial. In fact, the case the trial court was referencing was not identified on the record by name by the trial court until the court denied Wilson's written Crim.R. 29(C) motion for acquittal.

{¶ 22} Although the better practice would have been for the court to mention the case it was taking judicial notice of by name at trial, we find no error in the court's actions. *See State v. Pellettiere*, 2d Dist. Montgomery No. 21070, 2006-Ohio-1606, ¶ 9 (finding it "unnecessary for the trial court to specifically state the case in which it heard expert

testimony on the device" when taking judicial notice that the specific laser speed measurement device was reliable). The trial court previously heard expert testimony on the laser device at issue, determined it was scientifically accurate and reliable, and relayed this information to Wilson. The court, therefore, properly took judicial notice of prior expert testimony establishing the reliability of the laser device.

**{¶ 23}** Wilson argues, however, that the expert testimony the trial court previously heard in *Franklin v. Brown*, Franklin M.C. No. 14-01-TRD-0267, was insufficient to establish the scientific reliability and accuracy of the UltraLyte LR B because the device in *Brown* was a different laser device model. In *Brown*, the officer issuing the speeding citation used a "Lidar Ultralight 20/20" laser device. *See id.* In *Brown,*

> the [expert] witness * * * testified [about] how the Lidar Ultralight 20/20 worked and testified that it had been accepted as scientifically reliable in multiple other courts throughout the State. The witness testified that he had been qualified as an expert witness in more than fifty courts throughout the State of Ohio. He further testified that he had an electrical engineering degree plus thirty years in law enforcement and periodic factory training provided by the major equipment manufacturers. He further testified that he had repaired and tested the Lidar systems. He further testified that it was his opinion and his testimony in courts throughout Ohio, that the Lidar units and the Ultralight 20/20 are scientifically accurate and reliable for both speed and distance. He testified regarding sighting through the Lidar which has a scope in which the officer operating the 20/20 can zero in on a specific vehicle without difficulty.
>
> The expert further testified that * * * in his opinion, the Lidar Ultralight 20/20 and other Lidar laser units are both scientifically accurate and scientifically reliable.
>
> [The expert] testified that the product has been in production and use for a number of years and had demonstrated scientifically based, reliable and accurate operation since its release on the market. Further, that prior generations of the model were found to be similarly reliable and accurate and that the current Lidar 20/20 incorporated production changes that incorporated more use options and conveniences.
>
> [The expert] further testified that the Lidar Ultralight 20/20 had been exhaustively tested and evaluated by the National Institute

of Standards and Technology, a federal agency accountable for technological expertise by federal government, military, and most industrial manufacturing intelicommunications [sic] industries.

*Id.* Relying on the expert's testimony, the trial court in *Brown* "declared the Lidar Ultralight 20/20 and Lidar laser devices to be scientifically accurate and reliable for purposes of taking judicial notice in the future." *Id.*[4]

{¶ 24} "Although the underlying principles of laser technology may be the same from one device to another, generally judicial notice as to the reliability of a speed-measuring device is device specific. * * * Therefore, expert testimony is necessary, 'whether it be a new device or an upgrade of an existing device, before the court may take judicial notice of that particular device in future proceedings.'" *Starks*, 2011-Ohio-2344 at ¶ 25, quoting *State v. Kincaid*, 124 Ohio Misc.2d 92, 2003-Ohio-4632, ¶ 15. However, as we noted in a recent opinion, as "the UltraLyte appears to be a newer model or version of the LTI 20/20, and * * * this court has previously taken judicial notice of the scientific reliability of the LTI 20/20 * * * the state would only need to offer expert testimony that the fundamental operation and operating principles are the same so that the two lasers could be 'deemed different models of the same device.'" *Sweat*, 2016-Ohio-2680 at ¶ 9, fn. 1, quoting *Starks* at ¶ 24.

{¶ 25} We find that the state did offer testimony that the fundamental operation and operating principles of the LTI 20/20 and the UltraLyte LR B are the same, such that the reliability of the UltraLyte LR B was established. Trooper Bailey, an officer with more than 24 years of experience who has received annual training and certification on speed-measuring devices, testified that he has been certified in the use of laser, radar, and ultralight laser speed-measuring devices. In testifying that the UltraLyte LR B device was in proper working

---

4. "Lidar" is defined as "a device that is similar in operation to radar but emits pulsed laser light instead of microwaves." *Merriam-Webster's Online: Dictionary and Thesaurus*, https://www.merriam-webster.com/dictionary/lidar (accessed Feb. 9, 2018).

condition on May 13, 2017, Bailey described his compliance with, and the purpose of, the display integrity test, scope alignment test, reference frequency test, fixed distance test, and Delta distance test. Bailey also testified that regardless of what model of laser he uses, the fundamental operation and operating principles are the same. Specifically, Bailey testified, "whether I use a LTI 2020 and a LL, a UL LTI 2020 or LR B an ultra light laser, whatever one, it's still on the theory. It's still on the same principle. It doesn't change the theory here; the principle doesn't differ due to the model of the laser they give me." Accordingly, given his experience and training on laser and ultralight laser devices, his annual certifications on such devices, and his understanding and frequent use of said devices, we find that Bailey possessed the knowledge and was qualified to opine that the fundamental operation and operating principles of the UltraLyte LR B was the same as the LTI 2020. *See, e.g., State v. Yaun*, 3d Dist. Logan No. 8-07-22, 2008-Ohio-1902, ¶ 9-19 (finding that the trial court did not err in taking judicial notice of the Python II radar device when it had previously taken judicial notice of the K-55 device and the officer testifying at trial stated that the Python II radar operated on the same principals as the other radar device as it was "exactly the same radar as the K-55").

{¶ 26} For the foregoing reasons, we find no merit to Wilson's arguments and conclude that the trial court was entitled to take judicial notice of the expert testimony previously heard in *Franklin v. Brown*, Franklin M.C. No. 14-01-TRD-0267. This prior testimony, combined with Trooper Bailey's trial testimony established the scientific reliability of the UltraLyte LR B.[5] Wilson's first assignment of error is, therefore, overruled.

---

5.  **{¶ a}** In finding the UltraLyte LR B scientifically reliable, we take note of the Ohio Supreme Court's decision in *East Cleveland v. Ferell*, 168 Ohio St. 298 (1958). In *Ferell*, the court was asked to determine whether a defendant could be convicted of speeding based upon evidence obtained from a radar speed meter when there was not expert testimony provided with respect to the construction of the meter and its method of operation. *Id.* at 299. The court answered this question in the affirmative, holding that "it is sufficient to show that the [radar speed] meter was properly set up and tested by a technician trained by experience to do so, and that at the time it was functioning properly. * * * [I]t is not essential to the admissibility of such evidence to show, by independent

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO DISMISS BASED ON A SPEEDY TRIAL VIOLATION.

{¶ 29} In his second assignment of error, Wilson contends the trial court erred in denying his motion to dismiss as his statutory speedy-trial rights were violated by the state's failure to bring him to trial within the time prescribed by R.C. 2945.71.

{¶ 30} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I the Ohio Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32; *State v. Miller*, 12th Dist. Warren No. CA2009-01-008, 2009-Ohio-4831, ¶ 8. "[T]he General Assembly * * * enacted Ohio's speedy-trial statutes to preserve this right." *Id.*, citing R.C. 2945.71, et seq. Compliance with these statutes is mandatory and the statutes "must be strictly construed against the state." *Id.*, citing *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 12.

{¶ 31} R.C. 2945.73(B) provides that "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." Pursuant to R.C. 2945.71(A), "a person against whom a charge is pending in a court

---

expert testimony, the nature and function of or the scientific principles underling such speed meter." (Emphasis added.) *Id.* at syllabus. The court determined that "readings of a radar speed meter may be accepted into evidence, just as we accept photographs, X rays, electroencephalographs, speedometer readings, and the like, without the necessity of offering expert testimony as to the scientific principles underlying them." *Id.* at 303.

{¶ b} We recognize there is a difference between radar speed-measuring devices and laser-speed measuring devices. Our holding in this case in no way suggests that all laser-based speed-measuring devices should be judicially noticed or deemed scientifically reliable. We continue to hold that judicial notice as to the reliability of a speed-measuring device is device specific. *See Starks*, 2011-Ohio-2344 at ¶ 25. However, as discussed above, Trooper Bailey's testimony combined with the expert testimony previously heard by the trial court in *Brown* established the scientific reliability of the UltraLyte LR B. Under the circumstances presented in the present case, we conclude the state was not required to present independent expert testimony of the nature and function of or the scientific principles underlying the UltraLyte LR B – as it had previously done so in *Brown*.

not of record, or against whom a charge of minor misdemeanor is pending in a court of record, shall be brought to trial within thirty days after the person's arrest or the service of the summons."

{¶ 32} Once a defendant demonstrates he was not brought to trial within the permissible time period, the accused presents a prima facie case for dismissal based on a speedy-trial violation. *Miller*, 2009-Ohio-4831 at ¶ 9, citing *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, ¶ 10 (3d Dist.). The burden then shifts to the state to prove that time was sufficiently tolled and the speedy-trial time period extended. *Id.* R.C. 2945.72 enumerates specific instances in which the time period that a defendant must be brought to trial in is extended and includes "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action instituted by the accused." R.C. 2945.72(E). Additionally, the state may show that the defendant has waived his speedy-trial rights. *State v. Schuster*, 12th Dist. Clermont Nos. CA2015-05-040 and CA2015-05-041, 2015-Ohio-4818, ¶ 17. "To be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." *State v. King*, 70 Ohio St.3d 158 (1994), syllabus.

{¶ 33} Appellate review of speedy-trial issues involves a mixed question of law and fact. *State v. Messer*, 12th Dist. Clermont No. CA2006-10-084, 2007-Ohio-5899, ¶ 7. An appellate court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence, but will independently review whether the trial court correctly applied the law to the facts of the case. *Id.*

{¶ 34} Wilson received his speeding citation and summons on May 13, 2017. At the time Wilson's trial commenced on July 11, 2017, 59 days had elapsed – 29 days more than that permitted by R.C. 2945.71(A). However, the record establishes that a portion of this time period was tolled and the time chargeable to Wilson. On May 30, 2017, Wilson filed a

demand for discovery, which tolled the speedy-trial clock until the state complied with Wilson's request on July 5, 2017.[6] *See State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, syllabus (holding that "[a] demand for discovery * * * is a tolling event pursuant to R.C. 2945.72[E]"). During this time period, Wilson also executed a written waiver of time, indicating he needed time for "further case preparation."

{¶ 35} Contrary to Wilson's arguments, the 36 days that passed between the filing of his demand for discovery and the state's compliance with said demand is properly chargeable to Wilson. "R.C. 2945.72(E) implicitly recognizes that when a motion is filed by a defendant, there is a 'period of delay necessitated' – at the very least, for a reasonable time until the motion is responded to and ruled upon." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 26. Wilson's demand for discovery tolled the speedy-trial time until the state responded to the request 36 days later, which was a reasonable time period to respond given Trooper Bailey's unavailability while on vacation for nearly three weeks and Wilson's specific request for Bailey's employment and training information. *See State v. Johnson*, 12th Dist. Butler No. CA2011-09-169, 2013-Ohio-856, ¶ 33-34; s*ee also State v. Saffell*, 35 Ohio St.3d 90, 91-92 (1988) (finding that delay caused by an arresting officer's unavailability due to the officer's vacation was reasonable and tolled the speedy trial time period). The fact that Wilson indicated at the June 30, 2017 hearing that he no longer wished to waive time is of no consequence. The state was still entitled to a reasonable period of time to respond to Wilson's discovery request, and this time was chargeable to Wilson in accordance with R.C. 2945.72(E).

{¶ 36} Once the tolling event of Wilson requesting discovery is taken into consideration, the record reveals that Wilson was brought to trial 23 days after the summons

---

6. At trial, Wilson introduced Exhibit C, which was comprised of email communications between himself and the prosecutor. This exhibit indicates the state responded to Wilson's discovery request on July 5, 2017.

was served.  Therefore, as the state brought Wilson to trial within the 30-day requirement, Wilson's statutory speedy trial rights were not violated and the trial court did not err in denying Wilson's motion to dismiss.  Wilson's second assignment of error is overruled.

{¶ 37}  Assignment of Error No. 3:

{¶ 38}  THE TRIAL COURT ERRED BY ACCEPTING AN ELECTRONICALLY SIGNED CITATION WITHOUT ESTABLISHING THE ESSENTIAL ELEMENT OF INTENT TO SIGN.

{¶ 39}  In his third assignment of error, Wilson challenges the validity of his speeding citation and his subsequent conviction for speeding on the basis that the state failed to introduce evidence that Trooper Bailey intended to sign the citation.

{¶ 40}  R.C. 2935.26(D) provides that "[a] law enforcement officer who issues a citation shall complete *and sign the citation form*, serve a copy of the completed form upon the offender and, without unnecessary delay, file the original citation with the court having jurisdiction over the offense."  (Emphasis added.)  On July 29, 2014, the Franklin Municipal Court adopted a local rule of court, as permitted by Traf.R. 3(F), that allows for the use of electronically produced tickets.  The Franklin Municipal Court rule provides as follows:

> The use and filing of a ticket that is produced by computer or other electronic means is hereby authorized in the Franklin Municipal Court.  The electronically produced ticket shall conform in all substantive respects to the Ohio Uniform Traffic Ticket.  If an electronically produced ticket is issued at the scene of an alleged offense, the issuing officer shall provide the defendant with a paper copy of the ticket.

{¶ 41}  Wilson was issued an electronic speeding citation on May 13, 2017.  The citation was generated in compliance with the requirements of R.C. 2935.26(B) and Traf.R. 3, and contains Bailey's printed name as the "Charging Law Enforcement Officer" underneath the statement that, "[t]his issuing/charging law enforcement officer states under the penalties of perjury and falsification that he/she has read the above complaint and that it is true."

Despite this, Wilson argues that there is no evidence in the record indicating Bailey's "intent to sign" the citation, and in support of his argument, he cites to R.C. 1306.01(H).[7]

{¶ 42} We find that R.C. 1306.01(H) is inapplicable to the present case as this provision provides a definition of "electronic signature" as it is used in R.C. 1306.01 through 1306.23, in reference to commercial transactions. The definition of "electronic signature" relevant to Wilson's speeding violation is set forth in R.C. 4501.01(QQ). This provision provides that as used in Chapter 4511. of the Revised Code, "electronic signature" means "a signature in electronic format attached to or logically associated with an electronic record."

{¶ 43} Here, Bailey's electronic signature appeared on the citation and was logically associated with the citation. As Bailey explained at trial,

> We used to hand write tickets. They came up with a new system that verifies that you logged in, you're the you're the [sic] issuing citation, issuer, under your prescribed login. I have to go through about five passwords * * *. But once I log in whoever issues a ticket from that computer is me. Nobody else is signed in. * * * So I'm, I'm verified through the process of having an electronic signature that I am the person that's issuing and charging the person I'm stopping.

Bailey had to log into the program that issues the citation, fill out the information set forth in the citation regarding Wilson's name, address, and driver's license number, the make, model, and license plate number associated with Wilson's car, and provide a description of the traffic violation Bailey observed Wilson commit before certifying that the information set forth in the complaint was true. As Bailey's electronic signature was logically associated with the citation, his electronic signature was valid.

{¶ 44} Accordingly, we find that Wilson's argument is without merit and his third assignment of error is overruled.

---

7. Pursuant to R.C. 1306.01(H), an "electronic signature" consists of "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."

{¶ 45} Assignment of Error No. 4:

{¶ 46} THE TRIAL COURT ERRED BY DENYING DEFENDANT'S [CRIM.R.] 29(A) MOTION FOR JUDGMENT OF ACQUITTAL WHEN THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION.

{¶ 47} In his fourth assignment of error, Wilson argues the trial court erred by denying his Crim.R. 29 motion for acquittal as there was insufficient evidence to support his conviction for speeding in violation of R.C. 4511.21(D)(3). In support of his argument, Wilson argues that the speed recorded by the UltraLyte LR B should be excluded from evidence as the speed-measuring device was scientifically unreliable. Absent this evidence, Wilson contends his conviction is supported by insufficient evidence as "[t]he unaided visual observation of a peace officer is insufficient to support a conviction for speeding."

{¶ 48} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5; *State v. Huston*, 12th Dist. Fayette Nos. CA2006-05-021 and CA2006-06-022, 2007-Ohio-4118, ¶ 5.

{¶ 49} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 50} Pursuant to R.C. 4511.21(D)(3), a person is guilty of speeding if that person operates a motor vehicle on an expressway or freeway at a speed exceeding 65 m.p.h. In the present case, the state introduced evidence that on May 13, 2017, Wilson was driving his 2002 Chevrolet on Interstate 75 at a speed exceeding 65 m.p.h. Trooper Bailey testified that pursuant to his visual estimation, Wilson's vehicle was traveling "above the posted speed limit," and that using the UltraLyte LR B, Wilson was recorded traveling 82 m.p.h. As discussed in our resolution of Wilson's first assignment of error, the trial court properly took notice of the scientific reliability of the UltraLyte LR B. Therefore, given the speed recorded on the speed-measuring device, and Bailey's visual observation of Wilson's vehicle's speed, we find that the state presented sufficient evidence to prove the offense of speeding. The trial court did not error in denying Wilson's motion for acquittal, and Wilson's fourth assignment of error is overruled.

{¶ 51} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.