[Cite as *State v. Lovelace*, 2023-Ohio-339.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-05-032 |
| - vs - | : | O P I N I O N<br>2/6/2023 |
| | : | |
| CHASE ALEXANDER LOVELACE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 22CR038918


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.



**M. POWELL, J.**

{¶ 1}   Appellant, Chase Alexander Lovelace, appeals his felony conviction for failure to comply with the signal of a police officer.

{¶ 2}   On December 16, 2021, a complaint was filed in the Franklin Municipal Court charging appellant with third-degree felony failure to comply with the order or signal of a

police officer in violation of R.C. 2921.331(B).[1]  Pursuant to the complaint, the municipal court issued a warrant for appellant's arrest.  On January 10, 2022, appellant was arrested pursuant to that warrant and remained incarcerated in the county jail in lieu of bail for the entire pendency of this case.  Appellant waived his preliminary hearing and the matter was bound over to the grand jury.  On February 14, 2022, appellant was indicted for the same offense with which he had been charged in municipal court.

{¶ 3}  During a pretrial hearing on March 4, 2022, the trial court determined that appellant's speedy trial time expired on April 7, 2022.[2]  However, the trial court sua sponte extended the trial time due to an "unusually heavy trial schedule."  On April 12, 2022, appellant filed a pro se motion to dismiss for violation of his right to a speedy trial, and his counsel orally moved for dismissal on those same grounds at a pretrial hearing on April 14, 2022.  The trial court denied the motions on April 19, 2022, and the matter proceeded to a jury trial on April 21, 2022.

{¶ 4}  At trial, the state presented testimony from Erica Robinson, who stated that on the morning of December 14, 2021, appellant came to her home to install a doorbell camera.  She left for work at 9:15 a.m. in a Dodge Charger that had been rented from Enterprise for her use by her parents.  Robinson's roommate, Karlin Wilson, arranged for Robinson to drop her off in Franklin on Robinson's way to work and then pick her up later that day.  When Robinson returned home from work around 4:30 p.m., appellant was still at her home.  Robinson received a text message from Wilson between 4:30 p.m. and 5:00

---

1. Appellant was charged under R.C. 2921.331(B).  Pursuant to division (C)(5)(a)(ii) of the statute, a violation of division (B) is a felony of the third degree if the jury finds that the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

2. As explained below, pursuant to R.C. 2945.71(C)(2) and (E), and R.C. 1.14, appellant's speedy trial period should have ended on April 12, 2022.

p.m. to come pick her up, but Robinson fell asleep on the couch with her purse—which contained the keys to the Charger—at her side.

{¶ 5} Wilson testified that the Charger, driven by appellant, arrived to pick her up. Aware that appellant was as an acquaintance of Robinson, Wilson assumed that Robinson sent him to come pick her up and she got in the passenger seat of the Charger.

{¶ 6} Appellant, on the other hand, testified that though he came to Robinson's home to install the doorbell, he never drove the Charger. Appellant contended that a man named Jeff Karl came to pick him up in the afternoon and the two went to Robinson's work before going out that evening.

{¶ 7} The state also presented testimony from Officer Wallace and Chief Colon. The officers testified that on the evening of December 14, 2021, they witnessed a Dodge Charger run a red light, for which they initiated a traffic stop. During the stop, Officer Wallace approached the driver's side of the Charger and spoke to both the passenger and the driver. The driver did not have a driver's license or any form of identification but gave the name "Chase Lovelace" and a social security number that matched that for a "Chase Lovelace," except for the last digit.

{¶ 8} A few moments later, Chief Colon approached the driver's side window. He testified that he spoke to the driver and asked the driver to remove the keys from the vehicle. The driver then revved the engine of the car and sped away. With Wallace at the wheel, the officers pursued the Charger at speeds of over 95 miles per hour, during which the driver drove over curbs, ignored traffic signals, and drove in and out of traffic. There were times during the pursuit that the driver turned off his headlights. After determining that it was no longer safe to continue to chase the Charger because of the volume of other vehicular and pedestrian traffic, the officers decided to terminate the chase.

{¶ 9} Thereafter, the officers ran the Tennessee license plate of the Charger and determined that it was an Enterprise rental car. Robinson's address was listed on the paperwork for the vehicle, so the officers proceeded to Robinson's home. Around that same time, the officers received information from dispatch that a Dodge Charger with the same Tennessee license plate had been stolen by an individual named Chase Lovelace. When the officers arrived at Robinson's home, they spoke with Robinson and Wilson about the incident, who both stated that appellant stole the vehicle. The officers recognized Wilson as the passenger in the Charger they had just pulled over.

{¶ 10} After hearing the evidence, the jury found appellant guilty, and the court sentenced him to a 36-month prison term. Appellant now appeals his conviction, raising two assignments of error for our review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED WHEN IT DENIED LOVELACE'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS.

{¶ 13} Appellant argues that the trial court erred when it denied his motion to dismiss on speedy trial grounds. Specifically, appellant argues that the trial court's "broad reason of a crowded trial docket, without further explanation" does not constitute a "reasonable continuance" pursuant to R.C. 2945.72(H).

{¶ 14} Appellate review of speedy-trial issues involves a mixed question of law and fact. *State v. Wilson*, 12th Dist. Warren No. CA2017-08-125, 2018-Ohio-702, ¶ 33. In reviewing these issues, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts independently. *Id.*

{¶ 15} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I of the Ohio

Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 32 (2002). The General Assembly preserved this right by enacting Ohio's speedy trial statutes, namely R.C. 2945.71-73. *Wilson* at ¶ 30.

{¶ 16} R.C. 2945.71(D) provides that a defendant shall be brought to trial on all charges within the time period required for the highest degree of offense charged. R.C. 2945.71(D). For an individual against whom a felony is pending, as was the case here, the defendant "shall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). For the purposes of computing time under division (C)(2), "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). More simply, this means that a defendant who is held in jail must be brought to trial within 90 days.

{¶ 17} The Ohio Supreme Court has held that these statutes set forth "mandates to which strict adherence is required." *State v. Wentworth*, 54 Ohio St.2d 171, 173 (1978). However, the supreme court has further held that "the prescribed times for trial set forth in R.C. 2945.71 are not absolute in all circumstances," and that "a certain measure of flexibility was intended by the General Assembly by the enactment of R.C. 2945.72, wherein discretionary authority is granted to extend the trial date beyond the R.C. 2945.71 time prescriptions." *Id.*, *citing State v. Lee*, 48 Ohio St.2d 208, 208 (1976).

{¶ 18} R.C. 2945.72 sets forth circumstances where these extensions are permitted. As applicable here, under R.C. 2945.72(H), a court may sua sponte grant a continuance provided the trial court (1) records the continuance through its journal entry prior to the expiration of the statutory period prescribed by R.C. 2945.71, (2) identifies the party to be charged with the continuance, and (3) "briefly indicates the reasons requiring the continuance." *State v. Noble*, 12th Dist. Clinton No. CA2007-03-008, 2008-Ohio-355, ¶ 15; *State v. Geraldo*, 13 Ohio App.3d. 27, 31 (6th Dist.1983) (collecting cases). With respect

to the third requirement, the trial court's record must "affirmatively [demonstrate] the necessity for a continuance and the reasonableness thereof." *Noble* at ¶ 10, *quoting Aurora v. Patrick*, 61 Ohio St.2d 107, 109 (1980).

{¶ 19} Here, appellant was arrested on January 10, 2022, and was held in jail in lieu of bail. Thus, pursuant to R.C. 2945.71(C)(2) and (E), he should have been tried by April 11, 2022, which was a Sunday. We note that this calculation differs from that of the trial court, who found that the speedy trial time expired on April 7, 2022. Pursuant to R.C. 1.14, because April 11, 2022, was a Sunday, appellant's speedy trial time should have been extended to April 12, 2022, which was the following Monday.[3] It is unclear how the trial court calculated April 7, 2022, to be the last day of the speedy trial period. Regardless, the trial court's calculation does not alter our analysis.

{¶ 20} While it is clear that appellant was not afforded a trial within the time provided by R.C. 2945.71(C) and (E), the trial court properly invoked R.C. 2945.72(H) by sua sponte granting a continuance until April 21, 2022—just nine days after the expiration of the speedy trial period.[4] At the pretrial hearing on March 4, 2022, the court explained on the record its reasons for the continuance. The court stated, "I have two jury trials a week between now and May with the exception of the murder case which is set. I have one murder case that week, so we've set it on the 21st of April." Defense counsel acknowledged the scheduling conflicts and made the court aware that appellant wished to exercise his speedy trial rights. The court further explained by stating, "Mr. Lovelace, I have looked at my docket. This is the absolute earliest that I can get this trial in, so I am going to extend the speedy trial date.

---

3. R.C. 1.14 states, "The time within which an act is required by law to be done shall be computed by excluding the first and including the last day; except that, when the last day falls on Sunday or a legal holiday, the act may be done on the next succeeding day that is not Sunday or a legal holiday."

4. We note that the trial court's calculation of the expiration of the speedy trial period as April 7, 2022, would mean that the continuance was for a total of fourteen days, which is negligible in this case.

. . ."  The court filed a journal entry on March 7, 2022, extending the time for trial well before the expiration of the statutory period.  In its entry, the trial court stated, "The Court has examined the docket in the coming weeks, and it is not possible to get the case tried within the speedy trial time because of an unusually heavy trial schedule."

{¶ 21} The Ohio Supreme Court has previously held that a trial court must "affirmatively demonstrate that a sua sponte continuance by the court was reasonable in light of its necessity or purpose," and that "mere entries by the trial court will ordinarily not suffice, except when the reasonableness of the continuance cannot be seriously questioned." *State v. Lee*, 48 Ohio St.2d 208, 209 (1976).  Further, the supreme court has also held that "court congestion may be a valid ground under subsection (H) for extending an accused's trial date beyond the time periods provided for by R.C. 2945-71," [sic] but "*practices which undercut the implementation of the 'speedy trial' provisions within R.C. 2945.71 and 2945.73 must not be employed to extend the requisite time periods*.'" (Emphasis sic.)  *State v. Wentworth*, 54 Ohio St.2d 171, 174 (1978).

{¶ 22} In *Lee*, the court upheld a continuance pursuant to R.C. 2945.73(H) that extended the speedy trial period by two days beyond the prescribed 90-day period due to a "crowded docket and judge's conference." *Lee* at 210.  In contrast, the *Wentworth* court found that a continuance of more than double the prescribed period entered upon the "barebones declaration of a crowded docket" stood in "marked contrast to the facial reasonableness of the continuance approved in *Lee*." *Wentworth* at 175.

{¶ 23} Based on these principles, this court has held that "scheduling conflicts, crowded dockets, or the lack of an available courtroom, are reasonable bases necessitating a continuance under R.C. 2945.72(H)." *State v. Redelman*, 12th Dist. Clinton, CA2012-04-010, 2013-Ohio-657, ¶ 24 (finding a 39-day continuance due to a crowded docket and the considerable strain on the defense's ability to prepare for trial based on newly issued

charges to be facially reasonable). Further, this court has held that "under R.C. 2945.72(H), a court may sua sponte grant a continuance, if "the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof." *State v. Noble*, 2008-Ohio-355 at ¶ 10.

{¶ 24} Under the circumstances herein, we find that the trial court did not err in denying appellant's motion to dismiss. As with the above cases, the trial court's docket was congested, and the court granted a continuance that was only nine days beyond the speedy trial expiration date due to two other jury trials and a murder trial. The court stated the reasons for the continuance both on the record and in its journal entry and did so before the expiration of the speedy trial period. While appellant argues that the reason provided by the court in its journal entry was too "broad," and that "a general assertion of a crowded docket with numerous trial [sic] set alone should not suffice as a reasonable basis," the reasonableness of this nine-day continuance cannot be seriously questioned. This is not a case where the court used a "mere entry" to extend the statutory period to a degree that undercuts the implementation of the speedy trial provisions.

{¶ 25} Accordingly, because appellant's speedy trial rights were not violated, appellant's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} LOVELACE'S FAILURE TO COMPLY CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE NOR THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 28} Appellant argues that his conviction for failure to comply with the signal or order or a police officer was not supported by sufficient evidence and was against the manifest weight of the evidence. Specifically, appellant asserts that the state failed to show that he was the driver of the Dodge Charger. Appellant discredits the testimony of Chief

Colon, Officer Wallace, and Karlin Wilson, who all identified appellant as the driver of the vehicle.

{¶ 29} "It is well settled that in order to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime at issue." *State v. Jividen*, 12th Dist. Warren No. CA2020-10-067, 2021-Ohio-2720, ¶ 11. The reasonable doubt standard is "proof that an ordinary person would be willing to rely and act upon in the most important of his own affairs." R.C. 2901.05(E). The "identity of the accused may be established by direct or circumstantial evidence, which have the same probative value. *State v. Bostick*, 12th Dist. Warren Nos. CA2022-03-013 and CA2022-04-015, 2022-Ohio-4228, ¶ 15.

{¶ 30} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different*. State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 13. In reviewing the sufficiency of the evidence, an appellate court "examines the evidence in order to determine whether such evidence, if believed, would support a conviction." *Id.* In contrast, a manifest weight challenge, "concerns the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other; weight is not a question of mathematics, but depends *on its effect in inducing belief*." (Emphasis added.) *State v. Babyak*, 12th Dist. Madison Nos. CA2009-10-023 and CA2010-03-006, 2010-Ohio-3820, ¶ 17.

{¶ 31} As this court has previously stated, "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Stodgel*, 12th Dist. Fayette No. CA2012-04-010, 2013-Ohio-1109, ¶ 34. Though a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct concepts, "[a] determination that a conviction is supported by

the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Enoch*, 12th Dist. Butler No. CA2019-07-117, 2020-Ohio-3406, ¶ 21.

{¶ 32} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must look at the entire record to weigh the evidence and all reasonable inferences, as well as consider the credibility of the witnesses. *Barnett* at ¶ 14. In reviewing the record, we must ask if the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *State v. Cephas*, 12th Dist. Buter No. CA2021-05-051, 2021-Ohio-4356, ¶ 9. While our review requires us to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide." *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. Accordingly, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Roberson*, 12th Dist. Warren No. CA2021-01-003, 2021-Ohio-3705, ¶ 29.

{¶ 33} Appellant was convicted of R.C. 2921.331(B), failure to comply with the signal of a police officer. The sole issue is whether appellant was the non-compliant driver of the Dodge Charger. After reviewing the evidence, we find that appellant's conviction was not against the manifest weight of the evidence. The jury heard testimony from Chief Colon, Officer Wallace, and Karlin Wilson regarding the identity of the appellant as the driver. The jury also watched the dashcam footage from Officer Wallace's police cruiser which showed the conversation between the officers and the driver.

{¶ 34} Officer Wallace testified that upon initiating the traffic stop of the Dodge Charger, she approached the passenger side of the vehicle with her flashlight. The footage shows Officer Wallace shining her flashlight into the vehicle. Officer Wallace spoke with

both the passenger and the driver. Officer Wallace asked the driver for his driver's license, and the driver said he did not have one. When asked for his name, the driver said "Chase Lovelace" and gave a social security number that matched the given name except for the last digit. The jury watched the video footage and heard the driver identify himself and give a social security number. Officer Wallace also testified that she could "clearly" see the driver, who she described as a tall, slender, white male with sleeves of tattoos on both arms. At trial, Officer Wallace identified appellant as the driver of the vehicle. Officer Wallace also testified that she had "face to face contact" with the passenger of the Charger, and was able to identify Wilson as the passenger at trial.

{¶ 35} Chief Colon's testimony was similar to that of Officer Wallace. Chief Colon testified that during the traffic stop, he saw Officer Wallace approach the passenger side and engage the passenger and the driver. He thereafter approached the driver side of the vehicle. Chief Colon testified that he spoke to the driver, who he described as a slender white male with tattoos and facial hair. Chief Colon identified appellant in court as the driver of the vehicle. Chief Colon testified that he saw the driver "with my eyes, as I made the approach to speak to him as he was in the driver's seat * * * He also gave his social security number, which was incorrect by one number."

{¶ 36} Chief Colon stated that shortly after terminating the chase of the Charger, he and Officer Wallace received a call that a car had been stolen by an individual named Chase Lovelace. Chief Colon pulled up an individual by that name on JusticeWeb and found "a prior mugshot of the same guy." Though Chief Colon cannot remember what the driver was wearing that night, Colon stated that the driver "looked at me" and he remembers that the driver was tattooed. Upon arriving at Robinson's address, Colon stated that both Robinson and Wilson told the officers that Chase Lovelace had stolen the Charger.

{¶ 37} Robinson's roommate, Karlin Wilson, who was the passenger in the Charger, also testified. She stated that while she had not met appellant before he came to pick her up, she did recognize the driver as Chase Lovelace, as she knew of him and "had him on Facebook." Wilson also recognized Officer Wallace as the officer who pulled the Charger over and identified appellant in court as the driver of the Charger.

{¶ 38} Appellant himself testified that he had seen Wilson around Robinson's home and that he "got more familiar with her, once I started coming over to Ms. Robinson's a little bit more." Appellant testified that he never drove the Dodge Charger; he said that an individual named Jeff Karl came to pick him up and that the two went to Robinson's work before going out that night. The appellant asserts that all of the other witnesses are not telling the truth. Notably, no witnesses testified to corroborate appellant's testimony, including Jeff Karl.

{¶ 39} The jury in this case, as the trier of fact, was in the best position to determine "the credibility of witnesses and weight to be given to the evidence as it relates to the perpetrator's identity." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 41. The jury clearly believed the testimony of Chief Colon, Officer Wallace, and Karlin Wilson that appellant was the driver of the vehicle. "The jury was in the best position to judge the credibility of the [witnesses], and we will not disturb its credibility determination." *State v. Bostick*, 12th Dist. Warren Nos. CA2022-03-013 and CA2022-04-015, 2022-Ohio-4228, ¶ 17. Moreover, "[i]t is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 40} In light of the consistent testimony of Officer Wallace, Chief Colon, and Wilson that identified appellant as the driver of the Dodge Charger, as well as the dashcam footage

supporting that testimony, and the three in-court identifications of appellant as the driver, we find that the evidence presented at trial does not weigh heavily in favor of acquittal. The evidence provided allowed the jury to conclude beyond a reasonable doubt that appellant was the driver of the Charger. All three of the witnesses had ample time and opportunity to see the driver of the vehicle to be able to identify him. "The jury did not clearly lose its way and create a manifest miscarriage of justice in finding appellant guilty of failing to comply with an order or signal of a police officer." *Bostick* at ¶ 18. The only evidence presented at trial that weighed in any favor of acquittal was the appellant's own testimony, and "it [is] within the purview of the jury to believe the testimony of one witness more than another." *State v. Creamer*, 7th Dist. Jefferson No. 97-JE-27, 1999 Ohio App. LEXIS 5796, 8–9 (Nov. 24, 1999).

{¶ 41} Accordingly, as appellant's conviction is not against the manifest weight of the evidence and is thus supported by sufficient evidence, his second assignment of error is overruled.

{¶ 42} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON J., concur.