[Cite as *State v. Patel*, 2019-Ohio-4033.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| GITA PATEL | : | Case No. 19-COA-011 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Municipal Court,
                                  Case No. 18TRD07461



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 September 30, 2019



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

ANDREW N. BUSH                            UPENDRA K. PATEL
1213 East Main Street                     1000 Whispering Pine Lane
Ashland, OH  44805                        Dayton, OH  45458

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant, Gita Patel, appeals the March 27, 2019 judgment entry of the Municipal Court for Ashland County, Ohio, denying her objections to the magistrate's decision and finding her guilty of speeding.  Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On August 19, 2018, Ohio State Highway Patrol Trooper Jesse Brown stopped appellant for speeding in violation of R.C. 4511.21.  A trial before a magistrate was held on October 10, 2018.  By decision filed October 12, 2018, the magistrate found appellant guilty of speeding.  The magistrate filed findings of fact and conclusions of law on October 25, 2018.  Appellant filed objections.  By judgment entry filed March 27, 2019, the trial court overruled the objections and adopted the magistrate's decision.

{¶ 3}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 4}  "THE TRIAL COURT ERRED AS A MATTER OF LAW IN TAKING JUDICIAL NOTICE OF THE SCIENTIFIC RELIABILITY OF THE ULTRALYTE LR B LASER."

II

{¶ 5}  "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF SPEEDING BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT ALL OF THE ESSENTIAL ELEMENTS UNDER R.C. 4511.21(D)(4)."

III

{¶ 6}   "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF SPEEDING BECAUSE THE COURT'S FINDING THAT THE TROOPER WAS USING AN LTI 20-20 LASER IN MEASURING THE DEFENDANT'S VEHICLE SPEED IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶ 7}   "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF SPEEDING BECAUSE THE COURT, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, FAILED TO FIND THAT THE TROOPER WAS USING AN ULTRALYTE LR B LASER IN MEASURING THE DEFENDANT'S VEHICLE SPEED."

V

{¶ 8}   "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF SPEEDING BECAUSE THE COURT'S FINDING THAT AN LTI 20-20 LASER WAS PROPERLY CERTIFIED, CHECKED AND TESTED IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

VI

{¶ 9}   "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF SPEEDING BECAUSE THE COURT'S FINDING THAT THE TROOPER ACCURATELY MEASURED DEFENDANT'S SPEED USING LTI 20-20 LASER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

VII

{¶ 10} "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF SPEEDING BECAUSE THE COURT'S FINDING THAT THE TROOPER'S TESTIMONY REGARDING CALIBRATION OF THE LTI 20-20 LASER IS CREDIBLE AND ACCURATE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

VIII

{¶ 11} "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF SPEEDING BECAUSE THE COURT'S FINDING THAT THE TROOPER WAS PROPERLY AND FULLY TRAINED AND A QUALIFIED TROOPER OF THE OHIO STATE PATROL IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IX

{¶ 12} "THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF SPEEDING BECAUSE THE COURT'S FINDING THAT LTI 20-20 LASER WAS RELIABLE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 13} Appellant claims the trial court erred in taking judicial notice of the scientific reliability of the UltraLyte LR B laser. We disagree.

{¶ 14} Trooper Brown testified on August 19, 2018, he clocked appellant travelling 85 m.p.h. in a 70 m.p.h. posted area. T. at 8, 14-15, 17. In clocking appellant, he used an UltraLyte LTI 20-20 laser. T. at 9, 15. Trooper Brown is certified in operating the laser device, and in fact, checked the calibration of the device at the start and end of his shift on August 19, 2018. T. at 7-8, 11-13, 43-44; State's Exhibit 1. The device was working properly. T. at 13.

{¶ 15} On cross-examination, defense counsel questioned Trooper Brown about the laser device he used. Trooper Brown testified the serial stamp on the device indicated it was an UltraLyte 20-20 laser. T. at 19. The traffic ticket lists "Laser # 7641." T. at 45. The certificate of calibration for device serial no. UX027641 indicates the device calibrated was an UltraLyte LR, REV 2, UltraLyte LR B. T. at 19-20; Defendant's Exhibit A. Trooper Brown insisted he checked the calibration of an UltraLyte LTI 20-20 that day and defense counsel argued he could not have because the certificate of calibration stated the device was an UltraLyte LR B. T. at 40-41. Defense counsel asked Trooper Brown if he was aware "there's more than one UltraLyte 20-20" and he responded that he knew there were older models "they look similar and have the same." T. at 18. He explained he was trained to use the UltraLytes and "models change, I know there's some UltraLyte LTI 20-20s, but we get new models, new lasers in and out as ones are replaced, like I said, I'm not exactly sure if it's the LR B or they're just UltraLyte LTI 20-20s is what they explained to us." T. at 34.

{¶ 16} On redirect, Trooper Brown explained "we say we use" 20-20s, and he had no reason to believe it was anything other than a 20-20, but he admitted the post receives newer models, they all look similar, and they are always called 20-20s. T. at 43.

{¶ 17} The certificate of calibration, Defendant's Exhibit A, is composed of two pages. The first page certifies "that LTI UltraLyte Laser Speed Detection Instrument serial number UX027641 meets or exceeds all manufacturer's specifications for velocity and range measurements." The second page indicates the model certified was an UltraLyte LR, REV 2, UltraLyte LR B.

{¶ 18} In his decision and findings of fact and conclusions of law filed October 25, 2018, the magistrate took judicial notice "of the accuracy of the LTI 20/20 ultralight laser pursuant to the case of *State of Ohio v. Randy Keller,* 06TRD00409, Ashland Municipal Court."

{¶ 19} In her objections filed October 24, 2018, appellant argued the magistrate erred in taking judicial notice of the scientific reliability of the LTI 20/20 when the laser used in the case was an UltraLyte LR B.

{¶ 20} In its March 27, 2019 judgment entry overruling appellant's objection, the trial court stated the following:

> Defendant makes much of the fact that the laser used to check her speed was a particular sub-model of the LTI Ultralyte. That is a distinction without a difference. This Court received considerable expert testimony establishing the scientific reliability of the LTI Ultralyte family of lasers in *State v. Keller, 06 TRD 00409.* It is not necessary that the process be repeated for each iteration of the same device. The Magistrate was justified and correct in taking judicial notice of the general scientific reliability of the LTI Ultralyte laser.

{¶ 21} "Establishing the reliability of a speed-measuring device can be accomplished for future cases by (1) a reported municipal court decision, (2) a reported or unreported case from the appellate court, or (3) the previous consideration of expert testimony about a specific device where the trial court notes it on the record." (Footnotes

omitted.) *Cincinnati v. Levine,* 158 Ohio App.3d 657, 2004-Ohio-5992, 821 N.E.2d 613, ¶ 10 (1st Dist.). *Accord State v. Dawson,* 5th Dist. Delaware No. 16 CAC 01 0002, 2016-Ohio-5605, ¶ 10.

{¶ 22} The trial court's decision was based on prong three, "the previous consideration of expert testimony about a specific device where the trial court notes it on the record." During the trial, the magistrate took judicial notice of the scientific reliability of the UltraLyte LTI 20-20 pursuant to *State v. Keller,* Ashland M.C. No. 06-TR-D-00409 (Feb. 13, 2006). T. at 9-11. In its judgment entry adopting the magistrate's decision, the trial court noted the UltraLyte LR B laser was a sub-model of the LTI UltraLyte and the trial court had "received considerable expert testimony establishing the scientific reliability of the LTI Ultralyte family of lasers" in the *Keller* case. The trial court noted it was not "necessary that the process be repeated for each iteration of the same device."

{¶ 23} We agree with the trial court that appellant's argument is a "distinction without a difference." The trial court noted the UltraLyte LR B was a sub-model of the UltraLyte LTI 20-20, and the trial court had received considerable testimony on the entire family of UltraLyte LTI lasers. Trooper Brown acknowledged there are different models or versions of the LTI 20-20, and everyone refers to them as "UltraLyte LTI 20-20." T. at 43. The certificate of calibration identified the laser as an "LTI UltraLyte Laser Speed Detection Instrument." The UltraLyte LR B is not new technology e.g., radar to laser device.

{¶ 24} The laser device was properly calibrated. Defendant's Exhibit A. Trooper Brown testified he received training on how to operate the laser and was certified. T. at 7-8, 11; State's Exhibit 1. He testified that he tested the device at the beginning and at

the end of his shift and the device was in proper working order.  T. at 11-13, 43-44.  At no time when he was checking appellant's speed did the device register an error.  T. at 15-16, 27, 44.

{¶ 25} Upon review, we find the trial court did not err in taking judicial notice of the scientific reliability of the laser device.

{¶ 26} Assignment of Error I is denied.

## II, III, IV, V, VI, VII, VIII, IX

{¶ 27} In the remaining assignments of error, appellant claims the trial court erred in finding her guilty of speeding because appellee failed to prove beyond a reasonable doubt all the essential elements under R.C. 4511.21(D)(4), and the finding was against the manifest weight of the evidence.  We disagree.

{¶ 28} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  *See also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 29} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990).  The trier of fact "has the best opportunity to view the demeanor, attitude, and

credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 30} Appellant was convicted of speeding in violation of R.C. 4511.21(D)(4) which states: "No person shall operate a motor vehicle * * * upon a street or highway as follows: At a speed exceeding seventy miles per hour upon a freeway as provided in division (B)(14) of this section."  Section (B)(14) states: "It is prima-facie lawful, in the absence of a lower limit declared or established pursuant to this section by the director of transportation or local authorities, for the operator of a motor vehicle * * * to operate the same at a speed not exceeding the following: Seventy miles per hour on all rural freeways."

{¶ 31} Trooper Brown testified appellant was sitting stationary on Interstate 71 when he observed appellant travelling towards him at a speed he estimated "in excess of 80 miles per hour."  T. at 8-9, 13-15.  Using the laser device, Trooper Brown clocked appellant doing "85, 84, 85, 82, 78."  T. at 16.  The posted speed limit on that portion of the highway is 70 m.p.h.  T. at 15.  There were no other vehicles around to interfere with the laser readings, and he was able to maintain visual contact with appellant the entire time.  T. at 17.  Trooper Brown cited appellant for driving "85 in a 70."  *Id.*  The magistrate/trial court found Trooper Brown to be credible.  In its March 27, 2019 judgment entry, the trial court determined the following about Trooper Brown:

His testimony was internally consistent, and wholly devoid of any indicia of bias or deception.  He clearly had the opportunity to observe and know the things about which he testified from personal observation on the

date of the speeding offense. His experience and training were adequately established, and he conducted himself in a professional and competent manner on the stand.

{¶ 32} The laser device used was properly calibrated and checked before and after Trooper Brown's shift, and Trooper Brown was trained and certified on how to use the device. T. at 7-8, 11-13, 43-44; State's Exhibit 1, Defendant's Exhibit A. Appellant's arguments on the scientific reliability of the laser device have been addressed in Assignment of Error I.

{¶ 33} Upon review, we find the trial court did not err in finding appellant guilty of speeding, and we do not find any manifest miscarriage of justice.

{¶ 34} Assignments of Error II, III, IV, V, VI, VII, VIII, and IX are denied.

{¶ 35} The judgment of the Municipal Court of Ashland County, Ohio is hereby affirmed.

By Wise, Earle, J.

Wise, John, P.J. concurs.

Delaney, J. dissents.

EEW/db

*Delaney, J., dissenting.*

{¶36} I respectfully dissent from the majority's analysis and disposition of appellant's assignments of errors and would reverse the trial court's judgment and discharge the appellant.

{¶37} The magistrate found, and the trial court confirmed, that Trooper Brown was credible when he testified he used an LTI 20/20 laser speed measuring device to determine appellant's speed. I agree with appellant this finding is against the manifest weight of the evidence. The state's certificate of calibration and matching serial number for the device at issue undisputedly demonstrates it was an Ultralyte LR B. (Exhibit A).

{¶38} The Twelfth Appellate District has noted the Ultralyte LR B is a newer model or version of the LTI 20/20. *State v. Wilson,* 2018-Ohio-702, Warran County App. CA2017-08-125, ¶ 24 (citations omitted). The state's certificate of calibration indicates that there are multiple models of the UltraLyte laser. (Exhibit A). The LTI 20/20 is not listed on Exhibit A.

{¶39} In 2006, the Ashland Municipal Court took judicial notice of the scientific reliability of the LTI 20/20 in *State v. Keller,* 06-00409. However, contrary to the trial court's finding in the instant case, the Ashland Municipal Court in *Keller* did not make any additional findings regarding the scientific reliability of the entire "LTI Ultralyte family" including other subsequent models of the Ultralyte laser.

{¶40} Both the First and Twelfth Appellate Districts have indicated that it is improper for a trial court to take judicial notice of the reliability of a different speed measuring device from the LTI 20/20, without taking additional expert testimony that the fundamental operation and operating principals are the same so that the two lasers could

be deemed different models of the same device. *State v. Wilson,* supra; *State v. McKay,*
2014-Ohio-2027, Hamilton County App. C-130657.

{¶41} For these reasons, I would sustain appellant's assignments of error and
reverse the trial court's conviction.